# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALEXANDER KHOCHINSKY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> REPUBLIC OF POLAND, ) <br> a foreign state, ) <br> ) <br> Defendant. ) | Case No. 1:18-cv-01532-DLF |

## AFFIDAVIT OF ALEXANDER KHOCHINSKY

I am Alexander Khochinsky, the plaintiff in the above-captioned matter. I attest as follows:

1. I live in New York, and I am a United States citizen.

2. I previously lived in Russia. I was born in Leningrad and later moved to Moscow.

3. My mother was Maria Ioelevna Knoll Khochinskaya, and my father was Jakov Solomonovich Khochinsky.

**My mother's home in Przemysl**

4. My mother was a Polish Jew who was born in 1922. She told me that she had grown up in Przemysl, a town in Poland, where her family owned land and a house. At the beginning of World War II, the boundary between German-controlled Poland and Soviet-controlled Poland ran through Przemysl. My mother lived in the part of Przemysl under Soviet control.

5. My mother told me the following: that on June 20, 1941, when she was approximately eighteen or nineteen years old, she travelled to Lviv (then in the USSR) to visit

her mother for the Sabbath. She stayed through Saturday night. That very weekend, Germany violated the Molotov-Ribbentrop pact and invaded the USSR. My mother fled, first to Kiev and eventually to Tashkent is Uzbekistan. She met Jakov, my father, in Tashkent.

6. Of the entire family that had been living in Przemysl at the time of the Nazi invasion, only my mother survived World War II.

7. In the early 1990s, I traveled to Przemysl. My mother had died in 1989, but I had documents regarding her birth and education, so I was able to find the land where she had lived, that the numbering of the houses had changed over the years, and that the property was now where a church stood.  My mother's house was gone, however.

8. To my knowledge, Poland did not pay any compensation for property lost during World War II. I am also familiar with the fierce anti-Semitism that has persisted in Poland. I did not think there was any possibility that Poland would provide restitution for my family's loss.

**My father's painting**

9. I grew up in my parents' home in Leningrad, Russia. My parents displayed artwork on the walls, and the painting *Girl with Dove* was displayed at least since my childhood.

10. I once asked my father where *Girl with Dove* was from. He told me that he acquired it after the end of WWII, and that before that, it was in Germany. (My father was never in Germany or Poland during or immediately after WWII.) He did not tell me whether he purchased it or received it as a gift. He never mentioned the possibility that it had been taken from Poland or had previously belonged to a museum.

11. My father died in Russia in 1991. I inherited my parents' apartment and its contents, including *Girl with Dove*. Soon after, I displayed *Girl with Dove* in my art gallery in Moscow.

12. In or around 2010, I learned that a painting that sounded similar to *Girl with Dove* had been reported missing from Poland. I did not know, and still do not know, whether the two paintings are the same object. To my knowledge, there is at least one very similar image on the market. The studio of Antoine Pesne (the artist who painted it) made hundreds of copies of the king's portrait and may have made copies of other works.

13. I believed that by offering an exchange, I could have a fruitful discussion with Poland about compensation for my mother's land. I contacted Poland to propose an exchange of the painting in return for compensation for my mother's land. I was willing to relinquish *Girl with Dove* as part of an exchange even if it was not the missing painting.

14. Subsequently, Poland sent a purported expert to my art gallery to look at the painting.

**Poland's first attempt to have me extradited**

15. In the early morning of February 26, 2015, eight FBI agents arrived at my home in New York City and arrested me in front of my children. As my thirteen-year-old daughter cried, I was taken away in handcuffs. As I soon learned, Poland had accused me of knowingly acquiring stolen artwork, and it sought my extradition from the U.S. on that basis.

16. I was imprisoned from February 26 to March 9, 2015, and then subject to house arrest and electronic monitoring. I was barely allowed to leave my home until August of 2015, when the District Court denied Poland's extradition request.

17. I am an art dealer, and my business depends upon my ability to leave my home to meet with partners and clients in Europe and Russia, and to attend international exhibitions, museums, and art fairs. Being jailed and then subject to house arrest nearly destroyed my livelihood.

3

**Poland's second attempt to have me extradited**

18. In the years since the extradition attempt, I have rebuilt my business and also become a U.S. citizen.

19. I filed this lawsuit in the summer of 2018.

20. I frequently travel to Europe for business. In my previous trips to Europe, I have never been arrested.

21. In February of 2019, I travelled to Paris, France for business.

22. On February 25, 2019, I arrived at Charles de Gaulle Airport for my flight home to New York with my daughter.

23. Soon before I would have boarded my flight, I was arrested and detained.

24. At the time of my arrest, I was informed that Poland had made an Interpol request and/or a European arrest warrant for my extradition.

25. I had a hearing on February 26, 2019 before a French court. Following the hearing, I was released from custody. However, I was informed that I was not allowed to leave France pending a second court hearing on March 6, 2019.

26. There has still not been a decision in this case. Another hearing is scheduled for June 5, 2019. Until then, I am allowed to leave France, but I am still not permitted to leave the European Union. This is a considerable personal and financial hardship. I have been trapped outside the United States since February, a severe drain on my well-being and finances.

27. At the time I am signing this, I do not know whether I will be able to return to my home. I am greatly concerned that I may be arrested and sent to Poland for a prosecution that I believe to be political and anti-Semitic.

4

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 25th, 2019.

Paris, France

_____
Alexander Khochinsky