# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ALEXANDER KHOCHINSKY,                   )
                                        )
              Plaintiff,                 )
                                        )        Case No. 1:18-cv-01532-DLF
       v.                               )
                                        )
REPUBLIC OF POLAND,                     )
       a foreign state,                 )
                                        )
              Defendant.                 )
_____)

## <u>AFFIDAVIT OF NICHOLAS M. O'DONNELL</u>

My name is Nicholas M. O'Donnell. I am an attorney representing Alexander Khochinsky in the above-captioned matter. I attest as follows:

1.     Mr. Khochinsky's Complaint against the Republic of Poland ("Poland") was filed on June 27, 2018.  Soon thereafter, my firm, Sullivan & Worcester LLP, engaged the firm Legal Language Services to assist with service of the Complaint under the Hague Convention of 1965 (the "Hague Convention").

2.     On or about July 16, 2018, pursuant to Article 5, subparagraph (a) of the Hague Convention, Legal Language Services served a Request for Service Abroad of Judicial or Extrajudicial Documents ("Request").  This Request, blank Certificate (to be completed by Poland), Summary of the Document to be Served, and Notice are enclosed as <u>Exhibit A</u> to my affidavit.

3.     The Request enclosed various documents, including the Summons in a Civil Action (with a translation into Polish), the Complaint (with a translation into Polish), and the

Civil Action Cover Sheet (with a translation into Polish).  These documents are enclosed as Exhibit B to my affidavit.

4.      A representative of Poland confirmed that the documents had been received but stated that the package was defective because certain paperwork identified Tom R. McLean of Legal Language Services, rather than me, as the applicant and requesting authority.  See Exhibit A.  Poland's representative did not identify any other purported "defects" with the service of documents.

5.      I did not (and do not) believe that the identification of Tom R. McLean constituted an actual defect under the Hague Convention; his role as a service provider was clear as was my role as Mr. Khochinsky's counsel of record in this proceeding.  Nonetheless, I authorized Legal Language Services to make the change and re-submit the paperwork.  The revised forms are enclosed as Exhibit C.  The paperwork was delivered by FedEx on October 8, 2018. Exhibit D.

6.      By January 30, 2019, I had not received the certificate of service required under the Hague Convention or received any other correspondence from Poland. On January 30, 2019, I sent an email inquiry to the Central Authority, requesting a certificate of service. Exhibit E. In my message, I wrote: "Please note that if the certificate of service is not received promptly, we will move for an entry of default in the U.S. Court handling this case."

7.      I received a response on February 8, 2019. Exhibit F. A representative of the Central Authority wrote: "the case manager at the Ministry will contact the competent court early next week in order to try establishing the case reference and execution status. As soon as we have obtained these, you will be informed in due course."

8.      I did not receive any further correspondence for two months.

9.      On April 8, 2019, the representative of the Central Authority sent me an email, writing that "the Polish court in charge of the service process . . . is still proceeding with the case." That email did not contain any information about when Poland would provide a certificate. Exhibit G.

10.     I replied on April 17, 2019. I wrote: "We still seek the certificate pursuant to Section 6 of the 1965 Hague Convention, as to which we still have not received any specific information. Failing receipt of the certificate within seven (7) days, my client will understand that Poland's willful days are, in fact, a refusal to provide a certificate, and he will seek final judgment against Poland." Exhibit H.

11.     The Polish representative replied on April 24, 2019. He wrote that a Polish court had issued the certificate of service and was being sent by mail. He did not include the certificate as an attachment to his email, and at this writing, I have not received the certificate of service. Exhibit I.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 25, 2019,

/s/ Nicholas M. O'Donnell

Nicholas M. O'Donnell

# EXHIBIT A

Case No.:1:18-cv-01532-DLF

### REQUEST
### FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signfication et à la notification à l'étranger des actes judiciaries ou extrajudiciares en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Tom R. McLean, Esq.<br>LEGAL LANGUAGE SERVICES<br>8014 State Line Road, Suite 110<br>Leawood, Kansas 66208<br>UNITED STATES OF AMERICA<br>Tel. 1.913.341.3167 | HAGUE CENTRAL AUTHORITY FOR POLAND<br>Ministerstwo Sprawiedliwosci (Ministry of Justice)<br>Departament Wspólpracy Miêdzynarodowej i Prawa Człowieka<br>(Department of International Cooperation & Human Rights)<br>Al. Ujazdowskie 11<br>00-950 Warszawa<br>POLAND |

The undersigned applicant has the honour to transmit -in duplicate- the document listed below and, in conformity with article 5 or the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
**(identity and address)**
*Le requérant soussigné a l'honneur de faire parvenir en double exemplaire à l'autorité destinataire les documents ci-dessous énumérés, en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savoir:*

*(Identité et adresse)*   REPUBLIC OF POLAND

Ministry of Justice

Al. Ujazdowskie 11, 00-950 Warszawa

POLAND

☒ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*   **Service in accordance with**
*(a) selon les formes légales (article 5, alinéa premier, lettre a).*   **the laws of Poland for service of documents in its territory**

☐ ~~(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:~~
*~~(b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :~~*

☐ ~~(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*:~~
*~~(c) le cas échéant, par remise simple (article 5, alinéa 2).~~*

The authority is requested to return or to have returned to the applicant a copy of the documents-and of the annexes*--with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte--et de ses annexes-- avec l'attestation figurant au verso.*

**THE PERSON AND ENTITIES WITHIN THE UNITED STATES COMPETENT TO FORWARD SERVICE REQUESTS PURSUANT TO ARTICLE 3 INCLUDE ANY COURT OFFICIAL; <u>ANY ATTORNEY</u>; OR ANY OTHER PERSON OR ENTITY AUTHORIZED BY THE RULES OF THE COURT.**
(See U.S. declaration to the 1965 Convention at the Hague Conference website: https://www.hcch.nct/en/states/authorities/details3/?aid=279)

List of documents
*Enumération des pieces*

| | |
|---|---|
| Executed "Request," in duplicate | |
| "Certificate" (unexecuted), in duplicate | Done at   Leawood, Kansas, U.S.A.  , the  7/16/18 |
| "Summary," in duplicate | *Fait à*  , le |
| "Notice," in duplicate | |
| Summons in a Civil Action, in English and Polish, in duplicate | **Signature and/or stamp.** |
| Complaint, in English and Polish, in duplicate | *Signature et/ou cachet.* |
| Civil Cover Sheet, in English and Polish, in duplicate | |

* Delete if inappropriate.
  *Rayer les mentions inutiles*

I

(Formerly OBD-116 which was formerly LAA-116,
both of which may still be used)

USM-94
(Est. 11/22/77)

Case No.:1:18-cv-01532-DLF

# CERTIFICATE
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1. que la demande a été exécutée*

    - the (date)
    - *le (date)* _____
    - at (place, street, number)
    - *à (locatlité, rue numéro)* _____
_____

    - in one of the following methods authorised by article 5-
    -*dans une des formes suivantes prévues à l'article 5:*
        ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
          *a) selon les formes légales (article 5, alinéa premier, lettre a).*
        ☐ (b) in accordance with the following particular method*:
          *b) selon la forme particulière suivante :* _____
_____

        ☐ (c) by delivery to the addressee, who accepted it voluntarily. *
          *c) par remise simple*
    The documents referred to in the request have been delivered to:
    *Les documents mentionnés dans la demande ont été remis à:*
        -(identity and description of person)
        *-(identité et qualité de la personne)* _____
_____

        -relationship to the addressee (family, business, or other):
        *-liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* _____
_____

2) that the document has not been served, by reason of the following facts*:
*2. que la demande n'a pas été exécutée, en raison des faits suivants:*
_____
_____
_____
_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.
*Conformént à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

Annexes
*Annexes*
Documents returned:
*Piéces renvoyées:*
_____
_____
_____

                Done at _____ , the _____
                *Fait à* _____ , *le* _____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'execution:*

                Signature and / or stamp.
_____    *Signature et / ou cachet.*
_____
_____    _____

*Delete if inappropriate.
*Rayer les mentions inutiles.*

2

Case No.:1:18-cv-01532-DLF

## SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'etranger des actes judiciaires et extrajudiciares en matière civile au commerciale. signée à La Haye, le 15 Novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

| | |
|---|---|
| **Name and address of the requesting authority:** | Tom R. McLean, Esq. |
| *Nom et adresse de l'autorité requérante :* | LEGAL LANGUAGE SERVICES |
| | 8014 State Line Road, Suite 110, Leawood, Kansas 66208, U.S.A. |
| | Tel. 1.913.341.3167 |

**Particulars of the parties\*:**
*Identité des parties :*      ALEXANDER KHOCHINSKY, *Plaintiff*
REPUBLIC OF POLAND, a foreign state, *Defendant*

### JUDICIAL DOCUMENT\*\*
*ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :*      To give notice to the Defendant of the commencement of a civil claim against it and to summon it to answer or otherwise respond.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige :*      A civil action has been commenced against the Defendant.

**Date and place for entering appearance\*\*:**
*Date et lieu de la comparution :*      Within sixty (60) days after service of the Summons (not counting the day of receipt), Defendant must serve on the Plaintiff's Attorney (Sullivan & Worcester LLP) an Answer to the attached Complaint or a Motion under Rule 12 of the Federal Rules of Civil Procedure.  Defendant also must file its Answer or Motion with the United States District Court for the District of Columbia, located at: E. Barrett Prettyman U.S. Courthouse, 333 Connecticut Avenue, N.W., Washington, District of Columbia 20001, U.S.A.

**Court which has given judgment\*\*:**
*Juridiction qui a rendu la décision :*      N/A

**Date of judgment\*\*:**
*Date de la décision :*      N/A

**Time limits stated in the document\*\*:**
*Indication des délais figurant dans l'acte:*      Within sixty (60) days after service of the Summons (not counting the day of receipt), Defendant must serve on the Plaintiff's Attorney (Sullivan & Worcester LLP) an Answer to the attached Complaint or a Motion under Rule 12 of the Federal Rules of Civil Procedure.  If Defendant fails to respond, Judgment by default may be entered against it for the relief demanded in the Complaint. Defendant also must file its Answer or Motion with the Court.

### EXTRAJUDICIAL DOCUMENT\*\*
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :*      N/A

**Time limits stated in the document\*\*:**
*Indication des délais figurant dans l'acte :*      N/A

---

\*    **If appropriate, identity and address of the person interested in the transmission of the document.**
*S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*                    \*U.S. Government Printing Office: 1990-262-211/15302
\*\*   **Delete if inappropriate.**
*Rayer les mentions inutiles*                    **3**

## NOTICE
### (recommended by the Fourteenth Session
### of Hague Conference of October, 1980)

**identity and address of the addressee**
*identité et adresse du destinataire*

---

REPUBLIC OF POLAND
Ministry of Justice
Al. Ujazdowskie 11
00-950 Warszawa
POLAND

---

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE "SUMMARY OF THE DOCUMENT TO BE SERVED" WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD, HOWEVER, READ THE DOCUMENT ITSELF CAREFULLY. IT M AY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

Neighborhood Legal Services Program of the District of Columbia
64 New York Avenue, NE
Washington, District of Columbia 20002
U.S.A.
Tel. 1.202.832.6577

### TRÈS IMPORT ANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES "ELÉMENTS ESSENTIELS DE L'ACTE" VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSS!BILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES :

Neighborhood Legal Services Program of the District of Columbia
64 New York Avenue, NE
Washington, District of Columbia 20002
U.S.A.
Tel. 1.202.832.6577

# EXHIBIT B



**LEGAL LANGUAGE SERVICES**

*A Division of ALS International, Inc.*
8014 State Line Road
Suite 110
Leawood, KS 66208

Telephone  (913) 341-3167
Toll Free    (800) 755-5775
Telefax     (913) 341-3168
www.legallanguage.com

**July 16, 2018**
*16 lipca 2018*

**To whom it may concern:**
*Do wszystkich zainteresowanych:*

**This is to certify that the attached translation from English into Polish is an accurate representation of the document received by this office.  This document is designated as:**
*Niniejszym poświadcza się, że załączone tłumaczenie z języka angielskiego na polski wiernie oddaje treść dokumentu otrzymanego przez tutejsze biuro. Dokument ten określony jako:*

**Summons in a Civil Action**
*Pozew w Sprawie Cywilnej*

**Tom McLean, an attorney with this company, certifies that Monika Darron, who translated this document, is fluent in Polish and standard North American English and qualified to translate.  He/she attests to the following:**
*Tom McLean, Adwokat tej firmy, poświadcza, że Monika Darron, który(-a) przetłumaczył(-a) ten dokument, biegle posługuje się językiem polskim oraz północnoamerykańskim angielskim i jest uprawniony(-a) do wykonywania tłumaczeń.  Poświadcza on(-a), co następuje:*

**"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document".**
*„O ile mi wiadomo, dołączony tekst jest wiernym, pełnym i dokładnym tłumaczeniem danego dokumentu".*

**Signature of Tom McLean**
*Podpis Tom McLean*

**Subscribed and sworn to before me this July 16, 2018.**
*Podpisano i zaprzysiężono w mojej obecności dnia 16 lipca 2018*

Maria Victoria Portuguez
**Notary Public, State of Kansas**
**Qualified in Johnson County**
**Commission Expires July 12, 2021**

*Maria Victoria Portuguez*
*Notariusz Publiczny, Stan Kansas*
*Uprawniona w Hrabstwie Johnson*
*Licencja Wygasa dnia 12 lipca 2021 r.*

MARIA VICTORIA PORTUGUEZ
NOTARY
MY APPOINTMENT
EXPIRES 7-12-2021
PUBLIC
STATE OF KANSAS

**Sincerely,**
*Z poważaniem,*

**Victor J. Hertz**
**President/***Prezes*

28 USC 1608 Summons
12/11

## SĄD REJONOWY STANÓW ZJEDNOCZONYCH
## DLA DYSTRYKTU KOLUMBII

| | | |
|---|---|---|
| Alexander Khochinski | ) | |
| *Powód* | ) | |
| | ) | |
| przeciwko | ) | Sprawa Cywilna Nr 18-1532 |
| | ) | |
| Rzeczypospolitej Polskiej, obcemu państwu | ) | |
| *Pozwanemu* | ) | |

### POZEW W SPRAWIE CYWILNEJ

DO:  *(Imię i nazwisko oraz adres pozwanego)*  Rzeczpospolita Polska
Ministerstwo Sprawiedliwości
al. Ujazdowskie 11
00-950 Warszawa

Wytoczono przeciwko Państwu sprawę w sądzie.

W ciągu 60 dni po doręczeniu niniejszego pozwu (nie wliczając dnia otrzymania) należy doręczyć stronie powodowej odpowiedź na załączony pozew lub wniosek zgodnie z Przepisem 12 Federalnych Przepisów o Postepowaniu Cywilnym.  Odpowiedź lub wniosek muszą być doręczone powodowi lub adwokatowi powoda, którego imię, nazwisko i adres podano poniżej:  Nicholas M. O'Donnell
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA 02109

W przypadku niezłożenia odpowiedzi, może zostać wydane przeciwko Państwu orzeczenie zaoczne uwzględniające zadośćuczynienie, którego żądanie zawarte jest w pozwie.  Odpowiedź lub wniosek należy również złożyć w sądzie.

*ANGELA D. CAESAR, SEKRETARZ SĄDU*

Sądy Rejonowe
i Upadłościowe
Stanów
Zjednoczonych

*Dystrykt Kolumbii*

Data:  5.7.2018

/p/  Tonya T. Hightower
*Podpis Sekretarza lub Zastępcy Sekretarza*

28 USC 1608 Pozew 12/11 (Strona 2)

Sprawa Cywilna Nr 18-1532

## DOWÓD DORĘCZENIA POZWU

*(Tej części nie należy składać w sądzie, chyba że wymaga tego Federalny Przepis o Postępowaniu Cywilnym (Fed. R. Civ. P) 4 (l))*

Niniejsze wezwanie dla *(imię i nazwisko osoby oraz stanowisko, jeśli dotyczy)*_____

otrzymałem(-am) w dniu *(data)*_____ .

[   ] osobiście doręczyłem(-am) wezwanie tej osobie w *(miejsce)*_____

_____ w dniu *(data)* _____ ; lub

[   ] zostawiłem(-am) wezwanie w miejscu zamieszkania tej osoby lub miejscu gdzie zwykle przebywa u *(imię i nazwisko)* _____ ,

osoby o odpowiednim wieku oraz rozwadze, która tam mieszka, w dniu (data)_____ oraz

wysłałem(-am) kopię na ostatni znany adres tej osoby; lub

[   ] doręczyłem(-am) wezwanie *(imię i nazwisko osoby)* _____ ,

który(-a) jest Uprawniony(-a) do przyjmowania pism procesowych w imieniu *(nazwa organizacji)*_____

_____ w dniu *(data)* _____ ; lub

[   ] zwróciłem(-am) wezwanie niedoręczone, ponieważ _____ ; lub

[   ] inne *(określić)*

Moje opłaty wynoszą _____ USD za podróż oraz _____ za usługę, łącznie ___0.00 USD___

Oświadczam pod rygorem odpowiedzialności karnej za składanie fałszywych zeznań, że te informacje są zgodne z prawdą.


Data: _____

_____
*Podpis osoby doręczającej*

_____
*Imię, nazwisko i stanowisko - drukowanymi literami*

_____
*Adres osoby doręczającej*

Dodatkowe informacje dotyczące podejmowanych prób doręczenia, itd.:

28 USC 1608 Summons
12/11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Alexander Khochinsky

*Plaintiff*

v.

Republic of Poland, a foreign state

*Defendant*

Civil Action No. 18-1532

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Republic of Poland,
Ministry of Justice
Al. Ujazdowskie 11
00-950 Warsaw

A lawsuit has been filed against you.

Within 60 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: 7/5/2018

/s/ Tonya T. Hightower

*Signature of Clerk or Deputy Clerk*

28 USC 1608 Summons (12/11) (Page 2)

Civil Action No.   18-1532

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ❏ I returned the summons unexecuted because _____ ; or

    ❏ Other *(specify):*

 

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:



**LEGAL LANGUAGE SERVICES**

*A Division of ALS International, Inc.*
8014 State Line Road
Suite 110
Leawood, KS 66208

Telephone (913) 341-3167
Toll Free (800) 755-5775
Telefax (913) 341-3168
www.legallanguage.com

**July 16, 2018**
*16 lipca 2018*

**To whom it may concern:**
*Do wszystkich zainteresowanych:*

**This is to certify that the attached translation from English into Polish is an accurate representation of the document received by this office. This document is designated as:**
*Niniejszym poświadcza się, że załączone tłumaczenie z języka angielskiego na polski wiernie oddaje treść dokumentu otrzymanego przez tutejsze biuro. Dokument ten określony jako:*

**Complaint**
*Pozew*

**Tom McLean, an attorney with this company, certifies that Monika Darron, who translated this document, is fluent in Polish and standard North American English and qualified to translate. He/she attests to the following:**
*Tom McLean, Adwokat tej firmy, poświadcza, że Monika Darron, który(-a) przetłumaczył(-a) ten dokument, biegle posługuje się językiem polskim oraz północnoamerykańskim angielskim i jest uprawniony(-a) do wykonywania tłumaczeń. Poświadcza on(-a), co następuje:*

**"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document".**
*„O ile mi wiadomo, dołączony tekst jest wiernym, pełnym i dokładnym tłumaczeniem danego dokumentu".*

**Signature of Tom McLean**
*Podpis Tom McLean*

**Subscribed and sworn to before me this July 16, 2018.**
*Podpisano i zaprzysiężono w mojej obecności dnia 16 lipca 2018*

**Maria Victoria Portuguez**
**Notary Public, State of Kansas**
**Qualified in Johnson County**
**Commission Expires July 12, 2021**

*Maria Victoria Portuguez*
*Notariusz Publiczny, Stan Kansas*
*Uprawniona w Hrabstwie Johnson*
*Licencja Wygasa dnia 12 lipca 2021 r.*

**Sincerely,**
*Z poważaniem,*

**Victor J. Hertz**
**President/***Prezes*

SĄD REJONOWY STANÓW ZJEDNOCZONYCH
DLA DYSTRYKTU KOLUMBII

| | | |
|---|---|---|
| ALEXANDER KHOCHINSKY, | ) | Nr sprawy 18-1532 |
| 70 Little West Street | ) | |
| New York, NY 10004-7439 | ) | |
| | ) | |
| Powód, | ) | |
| | ) | |
| przeciwko | ) | |
| | ) | |
| RZECZYPOSPOLITEJ POLSKIEJ, | ) | |
| obcemu państwu | ) | |
| | ) | |
| Pozwanemu | ) | |
| | ) | |

**POZEW**

Alexander Khochinsky (dalej zwany „Khochinsky"), w swoim pozwie przeciwko Rzeczypospolitej Polskiej (dalej zwaną „Polska"), podnosi następujące zarzuty:

**OŚWIADCZENIE WSTĘPNE**

1.     Celem niniejszego postępowania jest uzyskanie deklaratywnego orzeczenia oraz odszkodowania pieniężnego za odwetowe działania Polski przeciwko Khochinsky'emu za jego starania o restytucję majątku, który jego rodzina pozostawiła uciekając przed napierającą armią nazistowską w 1939 r., by nigdy bezpiecznie nie powrócić.  Gdy Khochinsky poprosił, aby Polska zapłaciła za ziemię zajętą po ucieczce jego matki z domu, Polska użyła fałszywych zarzutów, by starać się o jego ekstradycję i prawie zniszczyła mu życie. Polska dokonałaby tego z powodzeniem, gdyby niezależne sądownictwo Stanów Zjednoczonych nie odmówiło tej ekstradycji.

2.     W ostatnich latach rząd polski coraz częściej traktuje Żydów jak

kozły ofiarne i angażuje się w rewizjonizm historyczny i wręcz odrzuca Holocaust, do tego stopnia, że ostatnio nawet uznaje za niezgodne z prawem niektóre stwierdzenia dotyczące aspektów Holokaustu, które miały miejsce na terenach należących obecnie do Polski.

3.      Ta regresywna demagogia skierowana została przeciwko Khochinsky'emu, któremu grożono z całą mocą, jaką dysponuje państwo za zadawanie pytań, na które Polska nie chciała udzielić odpowiedzi.  Ta sprawa to polska współczesna Afera Dreyfusa, ukazująca instytucjonalny antysemityzm w jej instytucjach rządowych.

4.      To postępowanie odnosi się do działań odwetowych w złej wierze skierowanych przeciw Khochinsky'emu za jego starania o uzyskanie odszkodowanie za ziemię zajętą podczas II wojny światowej oraz ciągłych usiłowań Polski, by ukarać Khochinsky'ego za dochodzenie restytucji.

5      Matka Khochinsky'ego, Maria Ioelevna Knoll Khochinskaya (dalej zwaną „Maria"), była polską Żydówką, urodzoną w roku 1922.  Jej rodzina posiadała ziemię i dom w Polskim mieście, Przemyślu.

6.      Maria opuściła dom w 1941 uciekając przed armią niemiecką. Po ucieczce z Polski poznała i wyszła za mąż za Jakova Solomonovicha Khochinsky'ego, żołnierza Armii Czerwonej.

7.      Maria zmarła w roku 1989 i jej jedynym spadkobiercą jest Alexander Khochinsky.

8.      PO upadku komunizmu, Khochinsky odwiedził ziemię Marii. Był wstrząśnięty widząc, że na nieruchomości znajdował się kościół katolicki. Maria nigdy nie sprzedała swojej ziemi ani nie otrzymała za nią niczego tytułem wyrównania.

9.      Khochinsky dobrze zdaje sobie sprawę, że Polska jest wrogo nastawiona do wszelkich roszczeń dotyczących restytucji lub odszkodowań ze strony ofiar Holokaustu.  Już w bieżącym roku (2018), fatalny stan restytucji wywołał publiczną krytykę ze strony amerykańskich senatorów i amerykańskiego Sekretarza Stanu.

10.      W roku 2010 Khochinsky dowiedział się, że obraz, który odziedziczył po swoim ojcu wydawał się pasować do opisu obrazu, który podobno zginął z polskiego muzeum podczas II wojny światowej.

2

11.     Khochinsky miał nadzieję, że wzajemne pragnienie restytucji sprawiłoby, że Polska byłaby bardziej skłonna wziąć pod uwagę zapłacenie jego rodzinie za ziemię zajętą w Przemyślu. Skontaktował się z Polską w sprawie zarówno rodzinnej ziemi, jak i obrazu.

12.     Po raz pierwszy potomek ofiar Holocaustu, który starał się o restytucję, mógł także coś Polsce zaoferować. Polska blokowała restytucję przez dziesięciolecia, ale ten zbieg okoliczności stworzył historycznie unikatową możliwość przełomu.

13.     Na prośbę Khochinsky'ego o rekompensatę Polska zareagowała w mściwy sposób. Wymyślono fałszywe zarzuty, twierdząc, że Khochinsky świadomie przyjął skradzione dobra i starano się o jego ekstradycję ze Stanów Zjednoczonych, gdzie obecnie mieszka.

14.     Postępowanie ekstradycyjne spowodowało poważne trudności dla Khochinsky'ego, jego żony oraz ich dzieci. Dokumenty umożliwiające rodzinie podróże zostały skonfiskowane, a Khochinsky umieszczony został w areszcie domowym na wiele miesięcy.

15.     Polska niewątpliwie zamierzała [pokazać], że pozbawienie Khochinsky'ego wolności i areszt domowy stanowiły jedynie wstęp do o wiele gorszego cierpienia [czekającego go], gdy Polska zapewni jego ekstradycję opartą o fałszywe zarzuty.

16.     Postępowanie ekstradycyjne zakończyło się, gdy amerykański Sąd Rejonowy dla Południowego Rejonu Stanu Nowy Jork stwierdził, że Khochinsky nie podlega ekstradycji, ponieważ nie istniały nawet uzasadnione podstawy by wierzyć, że popełnił on przestępstwo, jakie mu zarzucano.

17.     Było to oszałamiająca reprymenda w odniesieniu do wniosku, który zwykle, niemal rutynowo, rozpatrywany jest pozytywnie. W istocie, Asystent Prokuratora Stanów Zjednoczonych, który działał na wniosek Polski, powiedział Sądowi Rejonowemu, że ekstradycja była sprawą przesądzoną. Sąd Rejonowy był innego zdania.

18.     To rzadko spotykane odrzucenie wniosku o ekstradycję podkreśla fakt, że Polska przedstawiła bezpodstawne zarzuty będące zemstą i próbą zastraszenia, a nie dążeniem do

3

sprawiedliwości.

## STRONY

19.     Khochinsky jest obywatelem Stanów Zjednoczonych, pochodzącym ze Związku Radzieckiego („ZSRR"), późniejszej Rosji. Mieszka w Nowym Jorku.

20.     Polska jest krajem obcym.

## WŁAŚCIWOŚĆ SĄDU I WŁAŚCIWOŚĆ MIEJSCOWA

21.     Polska oraz przedmiot powództwa podlegają kompetencji tego sądu zgodnie z Tytułem 28 Kodeksu Stanów Zjednoczonych  (28 U.S.C.)  § 1330 oraz Tytułem 28 Kodeksu Stanów Zjednoczonych  (28 U.S.C.) §§ 1605-07, Ustawą o immunitetach suwerennych państw obcych (Foreign Sovereign Immunities Act - dalej zwanej w skrócie według tytułu angielskiego tej ustawy „FSIA"). Pismo procesowe zostanie doręczone wszystkim Pozwanym zgodnie z Tytułem 28 U.S.C § 1608.

22.     Zgodnie z FSIA, 28 U.S.C. § 1605(a)(1) i (5) Polska nie podlega immunitetowi zabezpieczającemu kraj przed pozwem.

23.     Umieszczenie sprawy przeciwko Polsce jest właściwe w Dystrykcie Kolumbii zgodnie z 28 U.S.C. § 1391(f)(4), jako że sprawa wytoczona została przeciwko obcemu państwu (Polsce).

## ZARZUTY FAKTYCZNE

24.     Przemyśl to miasto o bogatej, wielowiekowej historii społeczności żydowskiej. Wzmianki o synagodze sięgają 1560 roku, a Stara Synagoga została ukończona w roku 1594.  Żydzi przemyscy przetrwali kolejne stulecia, znosząc rozmaite ataki antysemityzmu oraz pogromy pod panowaniem polskim, litewskim i austriackim.  Tuż przed wybuchem I wojny światowej, spis ludności cesarstwa austriackiego wykazał, że ludność żydowska w Przemyślu stanowiła prawie 30% ludności miasta.

25.     Maria urodziła się tam w roku 1922.

4

26.    W 1933 r. Adolf Hitler wraz z partią nazistowską przejął kontrolę nad rządem niemieckim. Podczas, gdy narzucali oni swój okrutny reżim skierowany przeciwko Żydom, przeciwnikom politycznym i niezliczonym innym ofiarom w całych Niemczech, starali się także rozszerzyć swoją władzę w całej Europie.

27.    Naziści skierowali przemoc polityczną początkowo przeciwko komunistom na arenie międzynarodowej oraz na terenie Niemiec.  Podczas, gdy Niemcy budowały nielegalnie swą siłę militarną w latach 30-tych, wielu ludzi przypuszczało, że pierwszym celem ataku ze strony nazistowskich Niemiec będzie Związek Radziecki, jako wróg ideologiczny.

28.    Ku wielkiemu zdziwieniu świata, nazistowskie Niemcy oraz Związek Radziecki oznajmiły, że w dniu 23 sierpnia 1939 r, podpisały wspólny pakt o nieagresji, szerzej znany jako Pakt Ribbentrop-Mołotow, którego nazwa pochodziła od nazwisk ówczesnych ministrów spraw zagranicznych Związku Radzieckiego i Niemiec, odpowiednio: Wiaczesława Mołotowa i Joachima von Ribbentropa.

29.    W jednej chwili, śmiertelni wrogowie - Socjalizm Narodowy i Sowiecki Komunizm stali się domniemanymi sprzymierzeńcami.

30.    Pakt Ribbentrop-Mołotow zawierał tajny protokół, czego reszta świata nie była świadoma. W tym tajnym protokole, Niemcy i Związek Radziecki zgodziły się dokonać natychmiastowego podziału Polski, a także zezwolić na podział krajów nadbałtyckich, Finlandii i Rumunii na „strefy wpływów." Polska na wschód od rzek Pisy, Narwi, Wisły i Sanu miała zostać zaaneksowana przez ZSRR, pozostawiając resztę kraju dla Niemiec.

31.    Zaledwie tydzień po podpisaniu Paktu Ribbentrop-Mołotow, w dniu 1 września 1939 r. Niemcy zaatakowały Polskę, rozpoczynając II wojnę światową. Później, tego samego miesiąca, ZSRR wkroczył do wschodniej Polski, czemu poświęcono o wiele mniej uwagi.

32.    Centrum miasta Przemyśla znalazło się w strefie zajętej przez ZSRR, lecz granica przebiegała przez samo miasto.  Na szczęście, dom Marii, Żydówki, nie znajdował się na terenie okupowanym przez nazistów.

33.     Maria została obywatelką sowiecką.

34.     W 1941 roku, 20 czerwca, Maria wraz ze swoją babcią wyjechały na wschód do Lwowa (wówczas na terenie ZSRR, obecnie na Ukrainie) by odwiedzić jej matkę na obchód szabatu, który rozpoczynał się w piątek po zachodzie słońca.  Maria wraz z babcią pozostała tam również w sobotę na noc.

35.     Następnego dnia rano, 22 czerwca 1941 r. o godzinie 4:00, Niemcy rozpoczęły operację Barbarossa i wkroczyły na teren Związku Radzieckiego, zrywając Pakt Ribbentrop-Mołotow. Wszyscy Żydzi na obszarze dawnego terytorium Polski oraz na niektórych terenach ZSRR zaatakowanych przez niemiecki Wermacht znaleźli się w śmiertelnym niebezpieczeństwie.

36.     Jak wspomniano powyżej, granica pomiędzy okupowanymi przez nazistów i przez sowietów terenami Polski przebiegała przez Przemyśl. Tak, więc pierwsze działania Wermachtu podczas operacji Barbarossa miały miejsce w samym Przemyślu. Gdyby Maria nie była w odwiedzinach u swojej matki, znalazłaby się wśród pierwszych ofiar tej operacji.

37.     Było to szczególnie tragiczne, gdyż tysiące polskich Żydów uciekło z niemieckiego Generalnego Gubernatorstwa rządzącego Polską do rzekomo sowieckiego terytorium.

38.     Niemcy założyły w Przemyślu getto. Synagoga została zniszczona, i pod koniec roku 1942 rozpoczęły się deportacje blisko 24 000 Żydów. Do września 1943 r. prawie wszyscy przemyscy Żydzi zostali deportowania do Auschwitz i do [obozu] w Bełżcu.

39.     Maria zdołała uciec na wschód, najpierw do Kijowa, i wreszcie do Taszkientu w Uzbekistanie. Tam, w wojskowym szpitalu, poznała swojego męża.

40.     Armia Czerwona przejęła Przemyśl ponownie w roku 1944.

41.     Ponad dziewięćdziesiąt procent (90%) tamtejszej polskiej społeczności żydowskiej zamordowano.

**Trwający nadal antysemityzm i antagonizm wobec restytucji.**

42.      Po II wojnie światowej Polska odzyskała niepodległość. Na wschodzie granice Polski zostały ustalone zgodnie z tzw. Linią Curzona, kilkanaście kilometrów za wschód od Przemyśla, umieszczając miasto ponownie na terenie Polski.

43.      Ze swojej strony, Maria i Jakov Khochinsky osiedlili się w Leningradzie (ZSRR), gdzie urodził się Alexander.

44.      Bardzo niewielu Żydów pozostało w wyzwolonej Polsce. Większość z nich została zabita; a ci, którzy uciekli, zakładali nowe życie w nowych krajach.

45.      Pomimo że miliony Żydów utraciło mienie podczas Holokaustu, Polska nigdy nie dołożyła żadnych znaczących starań, by dokonać rekompensaty wobec Żydów, którzy przeżyli, lub rodzin ofiar.

46.      Polska boryka się z problemami związanymi z Holokaustem, którego wielka część miała miejsce na polskiej ziemi.

47.      Po upadku komunizmu, nowe badania naukowe rzuciły niechciane światło na traktowanie polskich Żydów podczas Holokaustu przez Polaków.

48.      Jak wyjaśniono w nagrodzonej książce Neighbors (Sąsiedzi) autorstwa historyka Jana Grossa, nie wszystkie antysemickie akty okrucieństwa popełnione zostały przez Wehrmacht lub Niemców. Zamiast otwarcie skonfrontować tę część historii, Polska ukryła przeszłość.

49.      Ta niewygodna historia dotyczy również okresu powojennego. Żydzi, którzy ocaleli byli ofiarami dyskryminacji, a nawet brutalnych pogromów.  Ta część historii została zatuszowana podczas okresu komunistycznego.

50.      Podczas konferencji praskiej w 2009 r. Polska dołączyła do czterdziestu pięciu innych krajów zatwierdzając Deklarację Terezińską dotyczącą własności żydowskiej z okresu Holokaustu oraz związanych z tym kwestii.

51.     Polska wraz z innymi sygnatariuszami Deklaracji Terezińskiej uzgodniła, że „ochrona praw własności stanowi zasadniczy element społeczeństwa demokratycznego oraz praworządności".

52.     Deklaracja Terezińska stanowi:

> „Uważamy, że ważne jest, tam gdzie nie zostało to jeszcze skutecznie osiągnięte, zajęcie się prywatnymi roszczeniami ofiar Holokaustu (Shoah) dotyczącymi nieruchomości byłych właścicieli, spadkobierców lub ich następców, w drodze albo restytucji in rem albo rekompensaty, tak jak to będzie właściwe, w sprawiedliwy, wszechstronny i niedyskryminacyjny sposób... Proces takiej restytucji lub rekompensaty powinien być szybki, prosty, dostępny, transparentny i ani uciążliwy, ani kosztowny dla osoby występującej z roszczeniem [.]

53.     Deklaracja Terezińska dalej stanowi: „Zalecamy, by tam, gdzie nie zostało to zrobione, państwa uczestniczące w Konferencji Praskiej rozważyły wdrożenie narodowych programów, które zajmowałyby się nieruchomościami skonfiskowanymi przez nazistów, faszystów i ich kolaborantów."

54.     Pomimo tych zapewnień, Polska nie podjęła żadnych znaczących kroków, w celu zwrócenia mienia ofiarom Holokaustu oraz ich rodzinom, ale przeciwnie, blokowała usiłowania ofiar starających się o odszkodowanie.

55.     W 2015 r. Polska wprowadziła ustawę, która praktycznie uniemożliwia ofiarom i ich spadkobiercom ubieganie się o restytucję mienia znajdującego się w Warszawie. Prawo wykluczyło wszelkie roszczenia osób, które nie dopełniły wcześniejszego terminu składania wniosków do grudnia 1988 r., i stworzyło przeszkody nawet dla tych ofiar, które dotrzymały terminu.

56.     Polska znajduje się w pod władzą reakcyjnego, antydemokratycznego rządu, który z zadowoleniem podsyca dawne uprzedzenia dla zysku politycznego. Jak ostatnio podał The Economist;

> „to połączenie subtelnego i bezczelnego nacjonalistycznego rewizjonizmu reprezentuje dwa i pół roku rządów PiS [Law and Justice party]. Partia oczyściła administrację publiczną, prawnie zakazała oskarżania „narodu polskiego" o współudział w Holokauście, podgrzewa teorie spiskowe o katastrofie lotniczej w 2010 roku, w której zginął ówczesny prezydent

Lech Kaczyński i 95 innych osób pod Smoleńskiem, w Rosji.   Partia przymyka oczy na szowinistyczne zachowania jej zwolenników, jednocześnie ścigając pokojowych protestantów podczas comiesięcznych obchodów smoleńskiej katastrofy pod przewodnictwem Jarosława [.], brata bliźniaka Lecha, który jest przewodniczącym PiS.

57.     W odpowiedzi na niedopełnienie zobowiązań wynikających z Deklaracji Terezińskiej (nie mówiąc już o swoich moralnych zobowiązaniach) przez Polskę oraz inne kraje, Stany Zjednoczone uchwaliły ustawę Sprawiedliwość dla ocalonych osób, które do teraz nie otrzymały odszkodowania (Justice for Uncompensated Survivors Today, dalej zwaną „JUST").

58.     Ustawa JUST została podpisana w dniu 9 maja, 2018 roku. Wymaga ona od Sekretarza Stanu złożenia sprawozdania na temat sygnatariuszy Deklaracji Terezińskiej, które zawierać będzie informacje o odpowiednich przepisach i zasadach polityki tych krajów w świetle ich zobowiązań wynikających z Deklaracji Terezińskiej. Nie ma najmniejszych wątpliwości, że brak zastosowania się ze strony Polskiej był i będzie przedmiotem sprawozdania, o którym mówi ustawa.

59.     Senator Tammy Baldwin, która sponsorowała projekt ustawy, powiedziała: „Podkreślając tę kwestię jako priorytet amerykańskiej polityki zagranicznej, pobudzimy działania w krajach, które nie wywiązują się ze swoich zobowiązań."

60.     Polska rozważa obecnie ustawodawstwo, które ma na celu utworzenie drogi do restytucji, ale które praktycznie uniemożliwi to większości ofiar i ich spadkobiercom. Uchwalenie ustawy ograniczyłoby restytucję związaną z Holokaustem do obywateli polskich mieszkających w tym kraju, skutecznie karząc ofiary Holokaustu, które uciekły z kraju, aby ratować życie. Ustawa ogranicza również kwotę restytucji do ułamka wartości rzeczywistej nieruchomości, co nie stanowi znaczącego odszkodowania, a umniejsza jedynie ilość skradzionego mienia.

61.     W odpowiedzi na proponowaną ustawę, zaalarmowana koalicja amerykańskich Senatorów wystosowała pismo do Premiera Mateusza Morawieckiego w dniu 26 marca 2018 r.

62.     Pięćdziesięciu dziewięciu (59) Senatorów podpisało dwupartyjny list, który stwierdza: „Jesteśmy rozczarowani, że Polska pozostaje jedynym poważnym państwem Europy, które do tej pory nie przyjęło narodowej, kompleksowej ustawy przewidującej restytucję mienia bądź odszkodowania za własność prywatną [ ]"

63.     Senatorzy wyrazili przekonanie, że proponowana ustawa „nie spełnia standardów określonych w Deklaracji Terezińskiej i – jeśli wprowadzona byłaby bez poprawki – stanowiłaby brak sprawiedliwości. Jesteśmy głęboko zaniepokojeni faktem, że projekt ustawy, w obecnej formie, dyskryminowałby praktycznie wszystkich amerykańskich ocalałych [Żydów] i ich spadkobierców, ponieważ nie są oni obecnie obywatelami Polski i nie byli mieszkańcami Polski, gdy ich własność została znacjonalizowana."

64.     Podejście Polski do zagadnienia restytucji jest zgodne z jej uporczywą odmową wzięcia pod uwagę w jakimkolwiek stopniu odpowiedzialności za swoich prześladowanych.

65.     Jeszcze w tym roku Polska uchwaliła ustawę kryminalizującą wypowiedzi, obwiniające Polskę za zbrodnie popełnione w czasie Holokaustu.

66.     Stany Zjednoczone wielokrotnie wyraziły sprzeciw wobec tej ustawy. W dniu 6 lutego 2018 r. ówczesny Sekretarz Stanu Rex Tillerson wydał oświadczenie prasowe wyrażające amerykańskie „rozczarowanie tą ustawą". Sekretarz Tillerson poinformował, że ustawa „niekorzystnie wpływa na wolność słowa i badania naukowe".

**Matka Khochinsky'ego straciła podczas Holokaustu swój dom**

67.     Wszyscy członkowie rodziny Marii, którzy pozostali w Przemyślu zostali zamordowani przez nazistów.

68.     Maria była spadkobierczynią rodzinnego majątku, i po zamordowaniu jej rodziny, ziemia i dom stały się jej prawowitą własnością. Po jej śmierci, prawo własności mienia przeszło na jej syna, Khochinsky'ego.

69.     Gdy Khochinsky powrócił do Przemyśla w roku 1990 wraz z żoną i synem, stwierdził, że dom jego matki został zniszczony, a na jej ziemi znajdował się kościół katolicki.

70.     Maria nigdy nie uzyskała rekompensaty za mienie, które zostało zajęte, gdy jej rodzinę zamordowano.

**Khochinsky stara się o odszkodowanie za mienie swojej matki.**

71.     Khochinsky dobrze zdawał sobie sprawę, że Polska jest wrogo nastawiona do żydowskich roszczeń restytucyjnych.  Słusznie sądził, że wszelkie roszczenia o zwrot jego rodzinnego majątku będą prawdopodobnie daremne.

72.     Ocena sytuacji Khochinsky'ego zmieniła się w roku 2010, gdy dostrzegł możliwość przeprowadzenia znaczących negocjacji z polskim rządem związanych z obrazem, który odziedziczył.

73.     W roku 1991 Khochinsky odziedziczył „Dziewczynę z gołębiem", obraz namalowany przez Antoine Pesne, na podstawie testamentu swojego ojca. Jego rodzice byli właścicielami obrazu przed jego urodzeniem i obraz wisiał w ich mieszkaniu w Leningradzie.

74.     Około roku 2010, Khochinsky dowiedział się, że obraz, który według informacji zaginął z Polski, był podobny do jego „Dziewczyny z gołębiem".

75.     Właścicielem zaginionego obrazu było Wielkopolskie Muzeum w Poznaniu, w Polsce, które zakupiło go w roku 1931. Obraz został rzekomo usunięty z muzeum w celu zabezpieczenia i następnie zagrabiony przez nazistów i wywieziony do Niemiec.

76.     Jakov Solomonovich powiedział Khochinsky'emu że nabył obraz po II wojnie światowej, i że obraz znajdował się uprzednio w Niemczech.

77.     Jakov Solomonovich sam nigdy nie był w Niemczech ani w Polsce podczas, ani

bezpośrednio po II wojnie światowej. W roku 1943 został poważnie ranny będąc w okolicach Izium (na Ukrainie) i został natychmiast ewakuowany na wschód, a następnie do Taszkientu. W

11

roku 1944, gdy oddziały sowieckie weszły na teren Niemiec, Jakov Solomonovich był cywilem pracującym w Leningradzie.

78.    Jeśli faktycznie „Dziewczyna z gołębiem" była zaginionym obrazem, Khochinsky nie wiedział że została zabrana z Polski, lub że obraz należał przedtem do muzeum. Pierwszy raz dowiedział się o tych roszczeniach w roku 2010. Oprócz pochodzenia, istnieją dodatkowe powody, aby stwierdzić, że obraz Khochinsky'ego nie jest zaginionym dziełem sztuki. Domniemany znawca, którego Polska przedstawiła, by oskarżyć Khochinsky'ego, zignorował te ważne szczegóły.

79.    Aczkolwiek Khochinsky nie wiedział czy obraz, który odziedziczył był faktycznie zaginionym obrazem, zauważył podobieństwa pomiędzy obrazami i pomyślał, że Polska mogłaby uznać go za godny uwagi substytut.

80.    Khochinsky wierzył, że jeśli zaoferuje wymianę, zamiast zwykłego żądania odszkodowania za mienie swojej matki, jego dyskusje z Polską mogłyby być bardziej owocne. Zaoferował, że zrzeknie się obrazu na rzecz Polski - nawet, jeśli nie jest to obraz, którego Polska poszukuje.

81.    W związku z tym Khochinsky napisał do Polski. W swoim orędziu odniósł się do kwestii dotyczącej mienia oraz poruszył osobne zagadnienie dotyczące obrazu i zaproponował wymianę, skupiając uwagę na uwzględnieniu cierpienia swojej matki.

82.    W dniu 10 maja 2010 r. przedstawiciel Polski wyraził wolę przeprowadzenia negocjacji, lecz oświadczył, że Polska pragnie, by znawca dokonał ewaluacji obrazu.

83.    Maciej Michałowski, kustosz, dokonał ewaluacji obrazu w galerii Khochinsky'ego w dniu 22 lipca 2010 roku.

84.    Pan Michałowski podobno doszedł do wniosku, że obraz jest zaginionym dziełem sztuki, ale o swoim wniosku nie poinformował Khochinsky'ego.

## Polska wszczęła odwetowe postępowanie w sprawie ekstradycji

85.      Początkowo Polska usiłowała wywrzeć presję na Khochinsky'ego poprzez kanały dyplomatyczne w Rosji, aby zaszkodzić jego działalności.  Rosja odrzuciła wniosek Polski, by przejąć Dziewczynę z gołębiem  i doręczyć ją do polskiej ambasady w Moskwie, i oddaliła żądania Polski. Gdy to się nie powiodło, Polska działając w złej wierze wszczęła postępowanie kryminalne przeciwko Khochinsky'emu w odwecie za jego prośbę o restytucję.

86.      W dniu 9 stycznia 2013 polski sąd oskarżył Khochinsky'ego o bezprawny zakup obrazu oraz o to, że nabywając go, był w pełni świadomy, iż obraz uzyskano w nielegalny sposób.

87.      Było to oczywiście nieprawdą. Khochinsky nigdy nie kupił tej rodzinnej pamiątki i nie mógł wiedzieć czy Niemcy zrabowali ją z Polskiego muzeum wiele dziesięcioleci wcześniej.

88.      Polska przypisała obrazowi nieuzasadnioną i sfabrykowaną „wartość", w celu podniesienia poziomu „przestępstwa".

89.      W normalnych okolicznościach, Polska nigdy nie wszczynała postępowania karnego przeciwko osobom, które w dobrej wierze zakupiły, odziedziczyły lub w inny sposób otrzymały dzieła sztuki, które były rzekomo uprzednio skradzione.

90.      W roku 2014 Wojciech Kowalski, polski pełnomocnik Ministra Spraw Zagranicznych do spraw rewindykacji dóbr kultury powiedział dziennikarzowi z The Economist, „że negocjacje dotyczące zwrotu skradzionych polskich dzieł sztuki mogą trwać nawet do czterech lat."

91.      Na przykład w 2017 r. Polska twierdziła, że obraz przeznaczony na aukcję Sotheby's - Taniec wśród mieczów  Henryka Siemiradzkiego - został w niewłaściwy sposób usunięty z Polski. Podobnie, jak Khochinsky, obecny właściciel wszedł w posiadanie obrazu poprzez swoich

rodziców. Polska oświadczyła, że w sporze dotyczącym Tańca wśród mieczów zamierza prowadzić postępowanie w sądzie cywilnym Zjednoczonego Królestwa.

92.    Wyjątkowe i bezpodstawne oskarżenia kryminalne przeciwko Khochinsky'emu nie były spowodowane polską polityką restytucyjną. Były raczej wniesione w celu ukarania Khochinsky'ego za jego sprawiedliwą i rozsądną prośbę o to, by restytucja została odwzajemniona.

93.    „List gończy" z nakazem aresztowania Khochinsky'ego opublikowany został 25 stycznia 2013 r.

94.    W dniu 1 lipca 2013 r., Polska zwróciła się do Departamentu Stanu USA w Waszyngtonie, z wnioskiem o ekstradycję Khochinsky'ego.  W kolejnych miesiącach Polska przekazała amerykańskiemu Departamentowi Sprawiedliwości w Waszyngtonie dalsze informacje.

95.    W piśmie z 3 listopada 2014 Polska zamieściła „Informacje uzupełniające do wniosku o tymczasowe aresztowanie i ekstradycję" w języku polskim wraz z tłumaczeniem na język angielski. Dokumenty te zostały wysłane do Departamentu Sprawiedliwości w Waszyngtonie.

96.    W tych „Informacjach uzupełniających" Prokuratura Okręgowa w Poznaniu poinformowała amerykański Departament Stanu, że Khochinsky nabył Dziewczynę z gołębiem „mimo, iż był świadomy faktu, że obraz pochodził z zabronionej działalności - zagrabienia mienia w 1943 r., przez ówczesne władze Trzeciej Rzeszy."

97.    Zarzut ten był bezpodstawny i całkowicie w złej wierze. Khochinsky nie miał możliwości poznania historii obrazu zanim jego ojciec [go miał], gdy (Khochinsky) odziedziczył go w 1991 r.  Polska ponownie przesłała informacje uzupełniające do Departamentu Sprawiedliwości w Waszyngtonie w liście opatrzonym datą 14 stycznia 2015. Te dodatkowe informacje zawierały przyznanie, że „świadek nie był w stanie wyjaśnić, w jaki sposób obraz autorstwa Antoine Pesne 'Dziewczyna z gołębiem' znalazł się w kolekcji Aleksandra KHOCHINSKIY'EGO. "

98.    25 lutego 2015 r. Asystent Prokuratora Stanów Zjednoczonych złożył wniosek o wydanie zaświadczenia o możliwości ekstradycji w Sądzie Rejonowym Stanów Zjednoczonych dla Południowego Rejonu Nowego Jorku.

99.    Na początku złożonego pozwu Asystent Prokuratora Stanów Zjednoczonych, który podpisał dokument, potwierdził: „W niniejszej sprawie występuję w imieniu i na rzecz Rządu Polski."

100.    Wcześnie rano, 26 lutego 2015 r. ośmiu agentów FBI przyjechało do domu Khochinsky'ego i aresztowało go w obecności jego dzieci.

101.    Khochinsky został publicznie zabrany z domu w kajdankach. Jego trzynastoletnia córka płakała podczas jego aresztowania.

102.    Został on osadzony w areszcie na okres od 26 lutego do 9 marca 2015 r.

103.    Po zwolnieniu, Khochinsky pozostał w areszcie domowym i podlegał elektronicznemu monitorowaniu.

104.    Khochinsky musiał uzyskać z sądu zezwolenie na wyjście, by mógł uczestniczyć w uroczystościach ukończenia gimnazjum swojej córki, a także by mógł korzystać z siłowni w swoim własnym budynku mieszkalnym.  Poza tymi kilkoma wyjątkami, miesiącami nie wychodził z mieszkania.

105.    Rodzina Khochinsky'ego również została ukarana za przestępstwo, którego on nie popełnił.  Żona Khochinsky'ego, Tatiana Khochinskaya oraz jego dzieci musiały oddać dokumenty podróżne. Pani Khochinskaya również prowadziła działalność gospodarczą w Rosji, która nieuchronnie ucierpiała, gdy nie była ona w stanie podróżować.

106.    Dnia 2 kwietnia 2015 r., Polskie Ministerstwo Sprawiedliwości przesłało dodatkowe dokumenty do amerykańskiego Departamentu Sprawiedliwości w Waszyngtonie w celu wykorzystania ich w postępowaniu ekstradycyjnym.

107.    Dokumenty wysłane 2 kwietnia 2015 r., obejmowały pisemne odpowiedzi na pytania. W jednej z tych odpowiedzi, Polska potwierdziła opisane przez Khochinsky'ego pochodzenie obrazu, i podsumowała: „Lokalna jednostka nie ma żadnych dowodów, które mogłyby jednoznacznie wykluczyć lub potwierdzić powyżej przedstawione przez Aleksandra Choczyńskiego wersje nabycia przez niego obrazu „Dziewczyna z gołębiem[.] "

108.    W dniu 9 kwietnia 2015 polskie Ministerstwo Sprawiedliwości ponownie wysłało pismo do amerykańskiego Departamentu Sprawiedliwości w Waszyngtonie, które zawierało dokumenty do wykorzystania w postępowaniu ekstradycyjnym. Pomimo, że Polska przyznała się do niepewności odnośnie faktów, w dalszym ciągu nalegała na ekstradycję. Jeden z załączonych dokumentów, datowany 26 marca 2015 r., stwierdzał: „W świetle obowiązującego prawa w Rzeczypospolitej Polskiej nie ma podstaw do negocjacji związanych z rezygnacją ze ścigania sądowego podejrzanego."

109.    W memorandum złożonym 23 kwietnia 2015 r., Asystent Prokuratora Stanów Zjednoczonych reprezentujący Polskę potwierdził: „Rząd Polski nie zajął stanowiska odnośnie kiedy dokładnie i w jaki sposób Khochinsky wszedł w posiadanie obrazu", a jednak Polska kontynuowała tę odwetową ekstradycję.

110.    Podczas posiedzenia sądu w tym postępowaniu, 17 czerwca 2015 r., Asystent Prokuratora Generalnego reprezentujący interesy Polski przyznał: „Nie sądzę, że w aktach istnieją dowody, które bezpośrednio wskazują na wiedzę Khochinskiy'ego przed wysłaniem przez niego e-maila do polskiej ambasady w Moskwie" w 2010 roku.

111.    Mimo to, Polska, za pośrednictwem amerykańskich prawników reprezentujących jej interesy nadal starała się uzyskać ekstradycję, argumentując, że nawet jeśli Khochinsky nie uzyskał obrazu bezprawnie, mógłby nadal być uznany za winnego innych działań, jak rzekome ukrywanie obrazu. Działania te nie stanowiły podstawy do ustaleń polskiego sądu przeciwko Khochinsky'emu, a Sąd Rejonowy odrzucił tę próbę fałszywej interpretacji podstaw ekstradycji.

112.    W opinii i orzeczeniu z datą 3 sierpnia 2015 r., Sąd Rejonowy stwierdził, że Stany Zjednoczone nie zdołały ustalić uzasadnionych podstaw powództwa, które są warunkiem wstępnym ekstradycji.

113.    Sąd zauważył, że „Rząd przyznał, że nie było żadnych bezpośrednich dowodów wiedzy Khochinsky'ego przed 18 maja 2010 r., że [obraz] 'Dziewczyna z gołębiem' został skradziony. W rzeczy samej, polski prokurator przyznał, że Polska nie wiedziała, kiedy i w jakich okolicznościach Khochinsky nabył obraz".

114.    Sąd stwierdził:

> Wręcz przeciwnie, jedyne dowody w aktach wydawały się popierać twierdzenia Khochinsky'ego że odziedziczył on 'Dziewczynę z gołębiem' po swoim ojcu i dowiedział się że że Polska poszukuje tego [obrazu] dopiero w 2010 r. Obydwaj bratankowie/siostrzeńcy Khochinsky'ego zeznawali, że przypominają sobie ten obraz wiszący w mieszkaniu ich dziadków. Ponadto, niepodważalne dowody wykazały, że Khochinsky otwarcie wystawiał obraz w swojej galerii w Moskwie przez wiele lat i umieszczał go w publikowanych katalogach... Takie zachowanie jest niezgodne z zachowaniem osoby, która wie, że jej własność jest poszukiwana przez obce państwo.

115.    Chociaż Sąd słusznie odmówił wydania zgody na ekstradycję, znaczne szkody zostały już poczynione. Podczas postępowania kryminalnego, Khochinsky'emu prawie nigdy nie wolno było opuszczać domu.

116.    Dla człowieka, którego działalność zależała od partnerów, klientów, wystaw, muzeum i targów sztuki w Europie i Rosji, to uwięzienie to było całkowicie rujnujące. Życie Khochinsky'ego zostało właściwie zniszczone.

## PODSTAWY POWÓDZTWA

### Punkt I
### Działanie odwetowe za [korzystanie] z Pierwszej Poprawki do Konstytucji Stanów Zjednoczonych

117.    Khochinsky powtarza i włącza przez odniesienie poprzednie akapity, tak jak gdyby w pełni zostały w tym miejscu przytoczone.

118.    Jako obywatel obcego kraju zamieszkujący w Nowym Jorku w roku 2015 (zanim został, w późniejszym terminie, obywatelem), Khochinsky był chroniony Pierwszą Poprawką do Konstytucji Stanów Zjednoczonych, która zapewnia  inter alia, wolność słowa.

119.    Polska starała się o ekstradycję Khochinsky'ego zgodnie z amerykańsko-polską Umową Ekstradycyjną z 1996 r.

120.    Pomimo twierdzenia Polski, iż starała się o ekstradycję w oparciu o (całkowicie sfabrykowane) zarzuty kryminalne, ekstradycja była odwetem za wystąpienie Khochinsky'ego na temat Holokaustu w Polsce i polskich zobowiązań restytucyjnych.

121.    Podejmując próbę ekstradycji Khochinsky'ego, Polska zabezpieczyła współpracę Departamentu Sprawiedliwości Stanów Zjednoczonych i Departamentu Stanu USA. Polska działała poprzez Departament Sprawiedliwości; Asystent Prokuratora Stanów Zjednoczonych w postępowaniu karnym nawet potwierdziła, że w tej sprawie działa w imieniu Rządu Polskiego.

122.    Polska celowo i z powodzeniem wykorzystała proces ekstradycji i związane z nim postępowanie karne, w celu pozbawienia Khochinsky'ego jego praw wynikających z Pierwszej Poprawki do Konstytucji Stanów Zjednoczonych.

123.    Khochinsky został aresztowany, uwięziony i umieszczony w areszcie domowym, co spowodowało, że doznał stresu emocjonalnego oraz poniósł straty finansowe.

124.    Postępowanie przeciwko Khochinsky'emu nie powiodło się z powodu braku uzasadnionych podstaw. Jak Sąd orzekł: „Rząd nie przytoczył żadnych dowodów na to, że Khochinsky w czasie, gdy nabył obraz wiedział, że [obraz] 'Dziewczyna z gołębiem' został skradziony.  W związku z tym, Rząd nie zdołał ustalić uzasadnionych podstaw, które pozwalałyby sądzić, że Khochinsky popełnił przestępstwo, o które został oskarżony. Wynika z tego, że wniosek Rządu o wydanie zaświadczenia o ekstradycji dla Khochinsky'ego musi zostać odrzucony, a skarga o ekstradycję oddalona."

125.    Bezprawne aresztowanie, uwięzienie, areszt domowy i postępowanie ekstradycyjne spowodowały znaczne straty dla Khochinsky'ego, w tym utratę dochodów w wysokości do

18

ustalenia podczas rozprawy.

## Punkt II
### Ustalenie tytułu własności

126.    Khochinsky powtarza i włącza przez odniesienie poprzednie akapity, tak jak gdyby w pełni zostały w tym miejscu przytoczone.

127.    Zgodnie z odpowiednim przepisem prawa rosyjskiego, Khochinsky jest prawdziwym i prawnym właścicielem Dziewczyny z gołębiem, obrazu, który odziedziczył on po swoim ojcu.

128.    Polska ścigała Khochinsky'ego pod zarzutem odpowiedzialności karnej w oparciu o fałszywe zarzuty, że Khochinsky nielegalnie wszedł w posiadanie obrazu.

129.    Aczkolwiek postępowanie ekstradycyjne zostało rozstrzygnięte na korzyść Khochinsky'ego, nie doszło jednak do żadnego rozwiązania leżących u podstaw zarzutów kryminalnych, a Polska nigdy nie przyznała, że Khochinsky uzyskał obraz zgodnie z prawem.

130.    Khochinsky zwraca się do Sądu o ustalenie jego tytułu własności odnośnie Dziewczyny z gołębiem.

## Punkt III
### Niedozwolona ingerencja w działalność dochodową

131.    Khochinsky powtarza i włącza przez odniesienie poprzednie akapity, tak jak gdyby w pełni zostały w tym miejscu przytoczone.

132.    W latach poprzedzających aresztowanie, Khochinsky prowadził dobrze prosperującą działalność w dziedzinie sztuki, którą podtrzymywał często podróżując do galerii, na wystawy, na spotkania z klientami i na inne wydarzenia do Europy.

133.    Poprzez rozmyślne uwięzienie Khochinsky'ego, a następnie zatrzymanie go w areszcie domowym przez ponad pięć miesięcy, Polska sparaliżowała działalność Khochinsky'ego.

134.   Działalność Khochinsky'ego została właściwie zniszczona podczas tych miesięcy, gdy nie mógł on opuszczać Nowego Jorku.

135.   Spowodowało to znaczne straty dla Khochinsky'ego, w tym utratę dochodów w wysokości do ustalenia podczas rozprawy.

## Punkt IV
### Umożliwienie przestępstwa naruszenia własności prywatnej

136.   Khochinsky powtarza i włącza przez odniesienie poprzednie akapity, tak jak gdyby w pełni zostały w tym miejscu przytoczone.

137.   Członkowie rodziny Marii mieszkali we własnym domu w Przemyślu aż do czasu zamordowania ich podczas Holokaustu.

138.   Prawo własności do tej nieruchomości przekazane zostało Marii, która była jej właścicielką do czasu swojej śmierci w 1989 r. Wtedy, nieruchomość przeszła na własność Khochinsky'ego, jej spadkobiercy.

139.   Prawo Marii do jej rodzinnego mienia nigdy nie było respektowane. Dom został zniszczony, a ziemia poddana ciągłemu naruszaniu własności. Obecnie zajmowana jest przez kościół katolicki.

140.   W roku 2010 Khochinsky starał się rozwiązać to nadal trwające naruszanie własności prywatnej i dojść do porozumienia w sprawie mienia, które zostało odebrane jego rodzinie.

141.   Polska skierowała przeciwko niemu działania odwetowe i starała się wyperswadować mu wszelkie możliwe przyszłe usiłowania, jakie mógłby podjąć, poprzez prowadzenie postępowania ekstradycyjnego opartego o sfabrykowane zarzuty kryminalne.

142.   Postępowanie Polski stanowiło pomoc w popełnieniu przestępstwa naruszenia własności prywatnej.

143.    Spowodowało to znaczne straty dla Khochinsky'ego, na sumę do ustalenia podczas rozprawy.

## Punkt V
## Nadużycie prawa

144.    Khochinsky powtarza i włącza przez odniesienie poprzednie akapity, tak jak gdyby w pełni zostały w tym miejscu przytoczone.

145.    Polska wykorzystała proces prawny w Stanach Zjednoczonych, włącznie z reprezentacją Asystenta Prokuratora Generalnego USA, który reprezentował Polskę w postępowaniu ekstradycyjnym w celu osiągnięcia niewłaściwego celu.

146.    Polska wykorzystała postępowanie ekstradycyjne jako mrożącą krew w żyłach demonstrację władzy państwowej przeciwko potomkowi osoby ocalałej z Holokaustu, by stłumić choćby szept dialogu na temat zobowiązań Polski odnośnie restytucji mienia ofiar Holocaustu.

147.    Polska bezprawnie wykorzystała groźbę ekstradycji, w połączeniu z faktycznym uwięzieniem, aby ukarać Khochinsky'ego za jego poparcie dla restytucji mienia ofiar Holokaustu przez polski rząd. Gdyby ekstradycja się powiodła, Khochinsky niewątpliwie byłby poddany surowszej karze w Polsce.

148.    Ponadto, Polska wykorzystała to publiczne postępowanie, aby ostrzec innych Żydów, że staną w obliczu gniewu państwa polskiego - i jego zdolności dosięgnięcia ich zarówno w Polsce, jak i za granicą - jeśli odważyliby się starać o restytucję mienia lub angażować się w inne rodzaje wypowiedzi, które Polska uważa za niedopuszczalne.

149.    Na poparcie próby ekstradycji Khochinsky'ego, Polska sfabrykowała kryminalne zarzuty i złożyła fałszywe oświadczenia. Są to niewłaściwe działania i nie stanowią one części legalnego procesu ekstradycyjnego.

150.    Aczkolwiek próba ekstradycji nie powiodła się, to jednak Polsce udało się osiągnąć cel ukarania Khochinsky'ego.

151.  Podczas tygodni uwięzienia i miesięcy spędzonych w areszcie domowym, Khochinsky doznał znacznych krzywd, włącznie ze stresem emocjonalnym i utratą dochodu.

152.  Spowodowało to znaczne straty dla Khochinsky'ego, na sumę do ustalenia podczas rozprawy.

## ŻĄDANIA POZWU

Z TEGO WZGLĘDU, Alexander Khochinsky z szacunkiem zwraca się do Sądu o:

A.  Wydanie orzeczenia na jego korzyść odnośnie wszystkich punktów niniejszego pozwu; oraz

B.  Wydanie orzeczenia stwierdzającego, że jest on prawowitym właścicielem Dziewczyny z gołębiem, obrazu, który odziedziczył po swoim ojcu; oraz

C.  Przyznanie odszkodowania za utracony dochód i inne straty związane z działalnością gospodarczą wynikłe z okresu jego uwięzienia i przebywania w areszcie domowym; oraz

D.  Przyznanie mu odszkodowania za stres emocjonalny, którego doznał, i który był wynikiem kryminalnego postępowania przeciwko niemu; oraz

E.  Przyznanie mu odszkodowania za naruszenie własności prywatnej w postaci jego rodzinnej ziemi; oraz

F.  Przyznanie mu odszkodowania retorsyjnego za skandaliczne zachowanie Polski; oraz

G.  Przyznanie mu zwrotu honorariów adwokackich i kosztów; oraz

H.  Przyznanie mu wszelkich innych środków prawnych, jakie Sąd uzna za stosowne.

27 czerwca 2018                          SULLIVAN & WORCESTER LLP

                                         /p/ Nicholas M. O'Donnell
                                         Nicholas M. O'Donnell (DC Bar No. 1011832)
                                         One Post Office Square
                                         Boston, Massachusetts 02109
                                         Telefon: (617) 338-2800
                                         Faks:   (617) 338-2880
                                         Email: nodonnell@sandw.com

                                         *Adwokaci występujący w sprawie Alexandra Khochinsky'ego.*

22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER KHOCHINSKY,<br>    70 Little West Street<br>    New York, NY 10004-7439<br><br>        Plaintiff,<br><br>    v.<br><br>REPUBLIC OF POLAND,<br>    a foreign state,<br><br>        Defendant. | Case No. 18-1532 |

## COMPLAINT

Alexander Khochinsky ("Khochinsky"), by and for his Complaint against the Republic of Poland ("Poland"), alleges and states as follows:

### PRELIMINARY STATEMENT

1.    This action seeks declaratory relief and money damages for Poland's retaliation against Khochinsky for seeking restitution for the property his family fled before the advancing Nazi army in 1939, never safely to return. When Khochinsky requested that Poland pay for the land that was seized after his mother fled her home, Poland used false allegations to seek his extradition and nearly destroyed his livelihood. But for the independent judiciary of the United States that refused this extradition, Poland might well have succeeded.

2.    In recent years Poland's government has increasingly used Jews as political scapegoats, and has engaged in historic revisionism and outright denial of the Holocaust, going so far as to criminalize recently certain statements about the aspects of the Holocaust that took place within what is now Poland.

3.      This regressive politicking found a target in Khochinsky, who was threatened

with the full might of the state for asking questions that Poland does not wish to answer. The

matter is Poland's modern day Dreyfus Affair, exposing institutional anti-Semitism in its

governing institutions.

4.      This action addresses the bad-faith retaliation against Khochinsky for his attempt

to procure restitution for the seizure of land during the World War II and Poland's ongoing

attempts to punish Khochinsky for seeking restitution.

5.      Khochinsky's mother, Maria Ioelevna Knoll Khochinskaya ("Maria"), was a

Polish Jew born in 1922. Her family owned land and a house in the Polish town of Przemysl.

6.      Maria fled her home in 1941 just ahead of the German army. After she escaped

Poland, she met and married Jakov Solomonovich Khochinsky, a Red Army soldier.

7.      Maria died in 1989 and Alexander Khochinsky is her sole heir.

8.      After the fall of Communism, Khochinsky visited Maria's land. He was shocked

to see that a Catholic church stood on the property. Maria had never sold her land or received

any compensation for it.

9.      Khochinsky was well-aware that Poland is hostile to any claims for restitution or

compensation by Holocaust victims. Just this year (2018), Poland's abysmal record on restitution

has prompted public criticism by U.S. Senators and the U.S. Secretary of State.

10.     In 2010, Khochinsky learned that a painting he had inherited from his father

seemed to match the description of a painting that had reportedly gone missing from a Polish

museum during World War II.

11.     Khochinsky hoped that mutual desires for restitution would make Poland more willing to consider paying his family for the land seized in Przemysl. He contacted Poland about both his family's land and the painting.

12.     For the first time, a descendant of Holocaust victims, who was seeking restitution, was also able to offer Poland something. Poland had stonewalled restitution for decades, but this confluence created a historically unique possibility for a breakthrough.

13.     Poland reacted vengefully to Khochinsky's request for compensation. It invented false charges that Khochinsky had knowingly received stolen goods, and it sought to have him extradited from his home in the United States.

14.     The extradition proceeding caused intense hardship for Khochinsky, his wife, and their children. The family's travel documents were confiscated, and Khochinsky was placed on house arrest for months.

15.     Poland doubtless intended that Khochinsky's imprisonment and house arrest were merely the prologue to much worse suffering once Poland secured his extradition on false charges.

16.     The extradition proceeding concluded when the U.S. District Court for the Southern District of New York found that Khochinsky was not extraditable because there was not even probable cause to believe that he had committed the crime with which he was charged.

17.     It was a stunning rebuke to a request that is ordinarily granted almost as a matter of course. Indeed, the Assistant United States Attorney who was acting on Poland's request told the District Court that extradition was a foregone conclusion. The District Court disagreed.

18.     This rare denial of an extradition request underscores the fact that Poland brought its baseless allegations as vengeance and intimidation, and not to pursue justice.

## PARTIES

19.     Khochinsky is a citizen of the United States, originally from the Soviet Union ("USSR"), later Russia. He resides in New York City.

20.     Poland is a foreign state.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over Poland pursuant to 28 U.S.C. § 1330 and 28 U.S.C. §§ 1605-07, the Foreign Sovereign Immunities Act ("FSIA"). Process will be served on all Defendants pursuant to 28 U.S.C. § 1608.

22.     Poland is not immune from suit pursuant to the FSIA, 28 U.S.C. § 1605(a)(1) and (5).

23.     Venue is proper in the District of Columbia against Poland pursuant to 28 U.S.C. § 1391(f)(4) as a case brought against a foreign state (Poland).

## FACTUAL ALLEGATIONS

24.     Przemysl had a rich history of a Jewish community that dated back centuries. References to a synagogue date back as far as 1560, with the Old Synagogue completed in 1594. Przemysl's Jews managed over the following centuries, enduring various bouts of anti-Semitism and pogroms under Polish, Lithuanian, and Austrian rule. Just before the outbreak of WWI, an Austrian Empire census showed that the Jewish population of Przemysl was almost 30% of the city.

25.     Maria was born there in 1922.

26.     In 1933, Adolf Hitler and the Nazi party gained control of the German government. Even as they imposed their cruel regime on Jews, political opponents, and countless other victims throughout Germany, they also sought to expand their power throughout Europe.

4

27.     Communists internationally and within Germany were among the Nazis' earliest targets for political violence. As Germany built up its military illegally in the 1930s, many assumed that the USSR would be Nazi Germany's first point of attack as its ideological foe.

28.     To the great surprise of the world, Nazi Germany and the Soviet Union announced on August 23, 1939 that they had signed a mutual non-aggression treaty, better known as the Molotov-Ribbentrop Pact after the foreign ministers of the USSR and Germany at the time, Vyacheslav Molotov and Joachim von Ribbentrop, respectively.

29.     In one stroke, mortal enemies — National Socialism and Soviet Communism— became putative allies.

30.     Unbeknownst to the rest of the world, the Molotov-Ribbentrop Pact contained a secret protocol. In the secret protocol, Germany and the USSR agreed to divide Poland immediately, as well as to permit the division of the Baltic states, Finland, and Romania into "spheres of influence." Poland east of the Pisa, Narev, Vistula and San rivers would be annexed by the USSR, leaving the remainder to Germany.

31.     Barely a week after the Molotov-Ribbentrop Pact, WWII began on September 1, 1939 when Germany invaded Poland. Later the same month, the USSR moved into eastern Poland, with far less attention.

32.     The city center of Przemysl was within the area annexed by the USSR, but the boundary ran through the city itself. Thankfully for Maria as a Jew, her home was not in the Nazi-occupied area.

33.     Maria became a Soviet citizen.

34.     On June 20, 1941, Maria and her grandmother had traveled east to Lviv (then within the USSR, now in Ukraine) to visit her mother for the Sabbath observance beginning Friday night at sundown. Maria and her grandmother stayed there Saturday night as well.

35.     The next morning at 4:00 am—June 22, 1941—Germany broke the Molotov-Ribbentrop Pact in Operation Barbarossa, and invaded the Soviet Union. Every Jew in Poland's former territory and the parts of the USSR invaded by the German Wehrmacht was immediately in mortal danger.

36.     As noted above, the boundary between the Nazi and  Soviet occupations of Poland ran through Przemysl. Thus, some of the first steps taken by the Wehrmacht in Operation Barbarossa were in Przemysl itself. Had Maria not been visiting her mother, she would have been among its first victims.

37.     This was particularly tragic because thousands of Polish Jews had fled Germany's brutal General Government administration of Poland into ostensibly Soviet territory.

38.     Germany established a ghetto in Przemysl. The synagogue was destroyed, and deportations of the by-then nearly 24,000 Jews began in late 1942. By September, 1943, nearly all of Przemysl's Jews had been deported to Auschwitz and Belzec.

39.     Maria managed to flee east, first to Kiev, and eventually to Tashkent in Uzbekistan. She met her husband there at a military hospital.

40.     The Red Army re-took Przemysl in 1944.

41.     More than ninety percent (90%) of the Polish Jewish community there had been murdered.

**Ongoing Anti-Semitism and Antagonism to Restitution**

42.     After World War II, Poland regained its independence. Poland's borders were established in the East pursuant to the so-called Curzon Line, several kilometers to the east of Przemysl, placing the city within Poland once again.

43.     For their part, Maria and Jakov Khochinsky settled in Leningrad (USSR), where Alexander was born.

44.     Very few Jews remained in liberated Poland. Most of them had been killed; those who had fled were establishing new lives in new countries.

45.     Although millions of Jews had lost their property during the Holocaust, Poland has never made any meaningful effort to make restitution to the surviving Jews or to the victims' families.

46.     Poland has struggled since with its relationship to the Holocaust, much of which took place on Polish soil.

47.     After the fall of Communism, new scholarship shined an unwanted spotlight on the treatment of Poland's Jews during the Holocaust by Poles.

48.     As explained in the award-winning book *Neighbors* by historian Jan Gross, not all the anti-Semitic atrocities committed were performed by the Wehrmacht or Germans. Rather than confront this history openly, Poland has buried the past.

49.     This uncomfortable history post-dates the war as well. Surviving Jews were subjected to discrimination and even violent pogroms. This history was covered up during the Communist era.

50.     During the 2009 Prague Conference, Poland joined forty-five other countries in affirming the Terezin Declaration on Holocaust Era Assets and Related Issues.

7

51.     Poland, and the other signatories of the Terezin Declaration, agreed that "the

protection of property rights is an essential component of a democratic society and the rule of

law."

52.     The Terezin Declaration provides:

> We consider it important, where it has not yet been effectively achieved, to
> address the private property claims of Holocaust (Shoah) victims concerning
> immovable (real) property of former owners, heirs or successors, by either in rem
> restitution or compensation, as may be appropriate, in a fair, comprehensive and
> nondiscriminatory manner . . . . The process of such restitution or compensation
> should be expeditious, simple, accessible, transparent, and neither burdensome
> nor costly to the individual claimant[.]

53.     The Terezin Declaration further provides: "We recommend, where it has not been

done, that states participating in the Prague Conference consider implementing national

programs to address immovable (real) property confiscated by Nazis, Fascists and their

collaborators."

54.     Despite these commitments, Poland has not taken any meaningful steps to return

property to Holocaust victims and their families, and it has instead obstructed victims who seek

restitution.

55.     In 2015, Poland passed a law that makes it nearly impossible for victims and their

heirs to seek restitution for property located in Warsaw. The law barred any claims by people

who had not met a prior, December 1988 filing deadline, and it created hurdles even for those

victims who had met the deadline.

56.     Poland is in the grip of a reactionary, anti-democratic government that is more

than happy to stoke ancient prejudices for political gain. As noted in *The Economist* recently;

> This combination of subtle and brazen nationalist revisionism captures the two-
> and-a-half years of PiS [Law and Justice party] rule. The party has purged the
> public administration, made it illegal to accuse the "Polish nation" of complicity
> in the Holocaust, and peddled conspiracy theories about the aeroplane crash in

8

2010 which killed then-president Lech Kaczynski and 95 others outside
Smolensk, in Russia. It has turned a blind eye to chauvinism among its supporters,
while prosecuting peaceful counter-protesters at the monthly commemorations of
the Smolensk disaster led by Lech's twin brother, Jaroslaw [], who is PiS's
chairman.

57.     In response to Poland and other countries that have not complied with their

Terezin Declaration obligations (to say nothing of their moral obligations), the U.S. enacted the

Justice for Uncompensated Survivors Today ("JUST") Act.

58.     The JUST Act was signed into law on May 9, 2018. It requires the Secretary of

State to submit a report on the signatories to the Terezin Declaration, which shall include

information about those countries' respective laws and policies in light of their obligations under

the Terezin Declaration. There is little question that Poland's failure to comply was and will be a

focus of the law's reports.

59.     Senator Tammy Baldwin, who sponsored the bill, said: "[B]y highlighting this

issue as an American foreign policy priority, we will spur action in countries that are falling

short of their obligations."

60.     Poland is currently considering legislation that purports to provide a path to

restitution, but that would actually shut the door on most victims and their heirs. If enacted, the

law would limit Holocaust-related restitution to Polish citizens living in that country, effectively

punishing Holocaust victims who fled their country to save their lives. This law also limits the

restitution amount to a fraction of the property's actual value, which is not meaningful

restitution; it merely reduces the amount of the theft.

61.     In response to this proposed law, an alarmed coalition of U.S. Senators sent a

letter to Prime Minister Mateusz Morawiecki of Poland on March 26, 2018.

62.     Fifty-nine (59) Senators signed the bipartisan letter, which stated: "We have been disappointed that Poland remains the only major European country that has not passed a national, comprehensive law for the restitution of, or compensation for, private property[.]"

63.     The Senators expressed their conviction that the proposed law "falls short of the standards set forth in the Terezin Declaration and—if passed without amendment—would be a failure of justice. We are deeply concerned that the bill, in its current form, would discriminate against virtually all American survivors and heirs on the basis that they are not currently citizens of Poland and that they were not residents of Poland when their property was nationalized."

64.     Poland's approach to restitution is consistent with its persistent refusal to consider any measure of responsibility for its persecuted people.

65.     Just this year, Poland passed a law criminalizing speech that blames Poland for crimes committed during the Holocaust.

66.     The U.S. has repeatedly expressed its opposition to this law. On February 6, 2018, then-Secretary of State Rex Tillerson issued a press statement expressing the United States' disappointment in this law. Secretary Tillerson reported that the law "adversely affects freedom of speech and academic inquiry."

**Khochinsky's Mother Lost Her Home During the Holocaust**

67.     All of Maria's family members who remained in Przemysl were murdered by the Nazis.

68.     Maria was the heir to her family's property, and after her family was destroyed, the land and house were her rightful property. After her death, the rights in the property passed to Khochinsky, her son.

69.     When Khochinsky returned to Przemysl in the 1990s with his wife and son, he discovered that his mother's home had been destroyed, and a Catholic church stood on her land.

70.     Maria was never compensated for the property that was seized as her family was murdered.

**Khochinsky Seeks Compensation for His Mother's Property**

71.     Khochinsky was keenly aware that Poland has a hostile attitude toward Jewish restitution claims. He reasonably believed that any claim for the restitution of his family's property was likely to be futile.

72.     Khochinsky's assessment of the situation changed in 2010, when he saw an opportunity to have a meaningful negotiation with the Polish government in connection with a painting that he had inherited.

73.     In 1991, Khochinsky inherited *Girl with Dove*, a painting by Antoine Pesne, pursuant to his father's will. His parents had owned the painting since before his birth, and it had hung in their apartment in Leningrad.

74.     In or around 2010, Khochinsky learned that a painting that had been reported missing from Poland was similar to his *Girl with Dove*.

75.     The missing painting had belonged to the Wielkopolskie Museum in Poznan, Poland, which purchased it in 1931. The painting was allegedly removed from the museum for protection and subsequently looted by Nazis and taken to Germany.

76.     Jakov Solomonovich had told Khochinsky that he had acquired the painting after World War II, and that the painting was previously in Germany.

77.     Jakov Solomonovich himself never entered Germany or Poland during or immediately after World War II. In 1943, he was seriously wounded near Izium (Ukraine) and

was immediately evacuated to the east, and finally to Tashkent. By 1944, when Soviet forces

entered Germany, Jakov Solomonovich was a civilian working in Leningrad.

78.     If, in fact, *Girl with Dove* were the missing painting, Khochinsky did not know

that it had been taken from Poland, or that the painting had previously belonged to a museum. He

first learned about those claims in 2010. Apart from the provenance, there are additional reasons

to conclude that Khochinsky's painting is <u>not</u> the missing work. The putative expert that Poland

put forth to accuse Khochinsky ignored these important details.

79.     Although Khochinsky did not know whether the painting he had inherited was in

fact the missing painting, he noticed the similarities between the paintings and thought that

Poland might consider it a worthy substitute.

80.     Khochinsky believed that by offering an exchange, instead of simply demanding

compensation for his mother's property, his discussions with Poland could be more fruitful. He

offered to relinquish his painting to Poland—even if it was not the one that Poland sought.

81.     Khochinsky therefore wrote to Poland. In his message, he addressed the issue

regarding the property and the separate issue regarding the painting, and he proposed an

exchange, his focus being recognition of his mother's suffering.

82.     On May 10, 2010, a representative of Poland indicated willingness to negotiate

but stated that Poland wanted an expert to evaluate the painting.

83.     Maciej Michalowski, a curator, evaluated the painting at Khochinsky's gallery on

July 22, 2010.

84.     Mr. Michawlowski reportedly concluded that the painting was the missing

artwork but did not inform Khochinsky of this conclusion.

12

**Poland Pursued a Retaliatory Extradition Proceeding**

85.    Initially, Poland attempted to pressure Khochinsky through diplomatic channels in Russia to harm Khochinsky's business. Russia refused Poland's request to seize *Girl with Dove* and bring it to the Polish Embassy in Moscow, and otherwise turned down Poland's demands. When that failed, Poland began bad-faith criminal proceedings against Khochinsky in retaliation for his request for restitution.

86.    On January 9, 2013, a Polish Court accused Khochinsky of purchasing the painting unlawfully, and of knowing that the painting had supposedly been obtained illegally at the time he acquired it.

87.    This was, of course, untrue. Khochinsky never purchased the family heirloom, and he had no way of knowing whether the Nazis had looted it from a Polish museum many decades before.

88.    Poland also assigned an unsupported and fabricated "value" to the painting to elevate the severity of the "crime."

89.    Under normal circumstances, Poland does not institute criminal proceedings against people who, in good faith, purchased, inherited, or otherwise received art that was once allegedly stolen.

90.    In 2014, Wojciech Kowalski, a Polish official leading the Foreign Ministry's property restoration unit, told a reporter for *The Economist* "that negotiations over the return of stolen Polish artwork can take up to four years."

91.    For example, in 2017, Poland asserted that a painting scheduled for a Sotheby's auction—*The Sword Dance* by Henryk Siemiradzaki—had been improperly removed from Poland. Like Khochinsky, the current owner acquired the painting through his parents. Poland

announced that it intended to proceed through the civil court system in the U.K. in the *The Sword Dance* dispute.

92.     The unique and baseless criminal allegations against Khochinsky were not driven by Polish restitution policy. Instead, they were brought to punish Khochinsky for his fair and reasonable request that restitution be reciprocal.

93.     A "Wanted Person Notice" ordering a search for Khochinsky's arrest was issued on January 25, 2013.

94.     On July 1, 2013, Poland submitted a request for Khochinsky's extradition to the U.S. Department of State in Washington, D.C. In the following months, Poland sent further information to the U.S. Department of Justice in Washington, D.C.

95.     In a letter dated November 3, 2014, Poland enclosed "Supplementary Information to a  Request for Provisional Arrest and Extradition"  in Polish with an English translation. The documents were sent to the Department of Justice in Washington, D.C.

96.     In this "Supplementary Information," the District Prosecutor's Office in Poznan informed the U.S. Department of State that Khochinsky acquired *Girl with a Dove* "despite being aware of the fact that the painting originated from a prohibited act—looting of property in 1943 by the then authorities of the German Third Reich."

97.     That accusation was baseless and purely in bad faith. Khochinsky had no way of knowing the painting's history before his father was when he (Khochinsky) inherited it in 1991. Poland again sent supplementary information to the Justice Department in Washington, D.C. in a letter dated January 14, 2015. This supplementary information included an admission that a "witness was unable to explain how the painting by Antoine Pesne 'Girl with a Dove' came to be in Alexander KHOCHINSKIY's collection."

98.     On February 25, 2015, an Assistant United States Attorney filed a petition for a

certificate of extraditability in the United States District Court for the Southern District of New

York.

99.     At the commencement of the filed complaint, the Assistant United States Attorney

who signed the document attested: "In this matter I act for and on behalf of the Government of

Poland."

100.    On February 26, 2015, eight FBI agents arrived at Khochinsky's house in the

early morning and arrested him in front of his children.

101.    Khochinsky was publicly taken from his home in handcuffs. His thirteen-year-old

daughter was crying during the arrest.

102.    He was imprisoned from February 26 to March 9, 2015.

103.    After Khochinsky was released, he was subject to home arrest and subject to

electronic monitoring.

104.    Khochinsky had to obtain the Court's leave to attend his daughter's middle school

graduation and to use the exercise facilities in his own apartment building. With those rare

exceptions, he did not leave his apartment for months.

105.    Khochinsky's family was also punished for the crime he did not commit.

Khochinsky's wife, Tatiana Khochinskaya, and his children were required to relinquish their

travel documents. Ms. Khochinskaya also had a business in Russia that inevitably suffered when

she could not travel.

106.    On April 2, 2015, Poland's Ministry of Justice sent additional documents to the

U.S. Department of Justice in Washington, D.C. for use in the extradition proceeding.

107.    The documents sent on April 2, 2015 included written answers to questions. In

one of these answers, Poland acknowledged Khochinsky's described provenance for the

painting, and concluded: "[T]he local unit has no evidence that could clearly rule out or confirm

the presented above versions by Aleksander Choczyński of his acquisition of the painting 'Girl

with a Dove[.]'"

108.    On April 9, 2015, Poland's Ministry of Justice again sent a letter to the U.S.

Department of Justice in Washington, D.C. that enclosed documents for use in the extradition

proceeding. Although Poland had admitted its uncertainty about the facts, it continued to insist

on extradition. One of the enclosed documents, dated March 26, 2015, stated: "in view of the law

in force in the Republic of Poland, there is no grounds for negotiations involving resignation of

the suspect's prosecution."

109.    In a memorandum filed on April 23, 2015, the Assistant United States Attorney

representing Poland acknowledged: "the Polish government has not taken a position as to

precisely when or how Khochinsky came into possession of the painting," yet Poland continued

to pursue this retaliatory extradition.

110.    During the June 17, 2015 hearing in this proceeding, the Assistant United States

Attorney representing Poland's interests acknowledged: "I do not believe there is evidence in the

record that goes directly to Khochinskiy's knowledge prior to his sending an email to the Polish

embassy in Moscow" in 2010.

111.    Poland, through the U.S. attorneys representing its interests, nonetheless

continued to try to obtain extradition by arguing that, even if Khochinsky did not wrongfully

obtain the painting, he could still be held culpable for other acts, such as allegedly concealing the

16

painting. These acts were not the basis for the Polish court's findings against Khochinsky, and the District Court rejected this attempt to misconstrue the basis for extradition.

112.    In an Opinion and Order dated August 3, 2015, the District Court found that the U.S. had failed to establish probable cause, which is a precondition of extraditability.

113.    The Court noted that "the Government acknowledged that there was no direct evidence of Khochinsky's knowledge before May 18, 2010 that 'Girl with Dove' was stolen. . . . Indeed, the Polish Prosecutor admitted that Poland did not know when or under what circumstances Khochinsky acquired the Painting."

114.    The Court concluded:

> To the contrary, the only evidence in the record tended to corroborate Khochinsky's claim that he inherited "Girl with Dove" from his father and only learned that Poland was seeking it in 2010. Both of Khochinsky's nephews testified that they recalled seeing the Painting hanging in their grandparents' apartment. Moreover, the undisputed evidence showed that Khochinsky openly displayed the Painting in his gallery in Moscow for many years and listed it in published catalogs. . . . This behavior is inconsistent with someone who knows his property is sought by a foreign sovereign.

115.    Although the Court rightly refused to authorize extradition, substantial damage had already been done. During the pendency of the criminal action, Khochinsky was barely ever allowed to leave his home.

116.    For a man whose business depended upon partners, clients, exhibitions, museum, and art fairs in Europe and Russia, this imprisonment was utterly devastating. Khochinsky's livelihood was all but destroyed.

## CAUSES OF ACTION

### Count I
### First Amendment Retaliation

117.    Khochinsky restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

118.    As a foreign national living in New York in 2015 (before he later became a

citizen), Khochinsky was protected by the First Amendment of the United States Constitution,

which protects, *inter alia*, freedom of speech.

119.    Poland sought Khochinsky's extradition pursuant to the 1996 U.S.-Poland

Extradition Treaty.

120.    Despite Poland's claim that it sought extradition based on (entirely fabricated)

criminal charges, the extradition was in retaliation for Khochinsky's speech about the Holocaust

in Poland and Poland's restitution obligations.

121.    In its attempt to have Khochinsky extradited, Poland secured the cooperation of

the U.S. Department of Justice and the U.S. Department of State. Poland acted through the

Department of Justice; the Assistant United States Attorney in the criminal proceeding even

attested that she acted on behalf of the Government of Poland in that matter.

122.    Poland deliberately, and successfully, used the extradition process and related

criminal proceeding to deprive Khochinsky of his rights under the First Amendment of the

United States Constitution.

123.    Khochinsky was arrested, imprisoned, and subjected to house arrest, which

caused him emotional distress and financial harm.

124.    These proceedings against Khochinsky failed for lack of probable cause. As the

Court held: "[T]he Government failed to adduce any evidence that Khochinsky knew 'Girl with

Dove' was stolen at the time he acquired it. Accordingly, the Government has failed to establish

probable cause to believe that Khochinsky committed the crime with which he is charged. It

follows that the Government's petition for a certificate of extraditability for Khochinsky must be,

and hereby is, denied and the Extradition Complaint dismissed."

125.    The wrongful arrest, imprisonment, house arrest, and extradition proceedings caused Khochinsky substantial damages, including loss of income in an amount to be determined at trial.

### Count II
### Quiet Title

126.    Khochinsky restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

127.    Under applicable Russian law, Khochinsky is the true and legal owner of *Girl with Dove,* a painting that he inherited from his father.

128.    Poland pursued Khochinsky on criminal charges based on false allegations that Khochinsky obtained the painting illegally.

129.    Although an extradition proceeding resolved in Khochinsky's favor, there has been no resolution of the underlying criminal charges, and Poland has never acknowledged that Khochinsky obtained the painting legitimately.

130.    Khochinsky asks this Court to establish his title to *Girl with Dove.*

### Count III
### Tortious Interference with Advantageous Relations

131.    Khochinsky restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

132.    In the years preceding his arrest, Khochinsky had a successful art business that he maintained through frequent trips to galleries, exhibitions, client meetings, and other events in Europe.

133.    By deliberating causing Khochinsky to be imprisoned and then subject to house arrest for over than five months, Poland crippled Khochinsky's business.

134.    Khochinsky's business was all but destroyed during the months when he could not leave New York.

135.    This caused Khochinsky substantial damages, including loss of income in an amount to be determined at trial.

## Count IV
### Aiding and Abetting Trespass

136.    Khochinsky restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

137.    Maria's family lived in their home in Przemysl until they were murdered during the Holocaust.

138.    The ownership of that property passed to Maria, who owned it until her death in 1989. At that time, it passed to Khochinsky, her heir.

139.    Maria's right to her family's property was never respected. The house was destroyed, and the land was subjected to ongoing trespass. It is currently occupied by the Catholic Church.

140.    In 2010, Khochinsky sought to address this ongoing trespass and to reach a settlement regarding the property that had been seized from his family.

141.    Poland retaliated against him, and sought to dissuade any possible future attempts he might make, by pursuing his extradition on fabricated criminal charges.

142.    Poland's conduct aided and abetted the trespass.

143.    This caused Khochinsky substantial damages, in an amount to be determined at trial.

## Count V
## Abuse of Process

144.     Khochinsky restates and incorporates by reference the preceding paragraphs as though fully set forth herein.

145.     Poland used legal process in the United States, including by and through the actions of the Assistant United States Attorney who represented Poland during extradition proceedings, to obtain an improper goal.

146.     Poland used the extradition proceedings as a chilling demonstration of state power against the child of Holocaust survivor in order to quench even a whisper of dialogue on the topic of Poland's obligations regarding Holocaust restitution.

147.     Poland wrongfully used the menace of extradition, coupled with actual imprisonment, to punish Khochinsky for his advocacy in favor of Holocaust restitution by the Polish government. If the extradition had been successful, Khochinsky doubtless would have faced even harsher punishment in Poland.

148.     Furthermore, Poland used this public proceeding to warn other Jews that they would face the wrath of the Polish state —and its power to reach them both in Poland and abroad—if they dared to seek restitution or engage in other speech that Poland deems unacceptable.

149.     In support of its attempt to extradite Khochinsky, Poland fabricated criminal charges and made false statements. These are improper acts and not part of the legitimate extradition process.

150.     Although the extradition attempt was not successful, Poland nonetheless succeeded in its goal of punishing Khochinsky.

151.    During his weeks of imprisonment and months of house arrest, Khochinsky

suffered severe harm, including emotional distress and loss of income.

152.    This caused Khochinsky substantial damages, in an amount to be determined at

trial.

### PRAYERS FOR RELIEF

WHEREFORE, Alexander Khochinsky respectfully prays this Court to:

A.  Enter judgment in his favor on all counts in this Complaint; and

B.  Issue an order declaring that he legally owns *Girl with Dove,* which he inherited from his
    father; and

C.  Award him damages for the income and other business-related losses that resulted from
    his period of imprisonment and house arrest; and

D.  Award him damages for the emotional distress he suffered during and resulting from the
    criminal proceeding against him; and

E.  Award him damages for the trespass to his family's land; and

F.  Award him punitive damages for Poland's egregious conduct; and

G.  Award him attorney's fees and costs; and

H.  And award other such relief as this Court may deem just.

June 27, 2018                          SULLIVAN & WORCESTER LLP

                                       /s/ Nicholas M. O'Donnell
                                       Nicholas M. O'Donnell (DC Bar No. 1011832)
                                       One Post Office Square
                                       Boston, Massachusetts 02109
                                       Telephone: (617) 338-2800
                                       Facsimile:  (617) 338-2880
                                       Email: nodonnell@sandw.com

                                       *Attorneys of record for Plaintiff Alexander
                                       Khochinsky*

22



**LEGAL LANGUAGE SERVICES**

*A Division of ALS International, Inc.*
8014 State Line Road
Suite 110
Leawood, KS 66208

Telephone  (913) 341-3167
Toll Free     (800) 755-5775
Telefax      (913) 341-3168
www.legallanguage.com

July 16, 2018
*16 lipca 2018*

To whom it may concern:
*Do wszystkich zainteresowanych:*

This is to certify that the attached translation from English into Polish is an accurate representation of the document received by this office.  This document is designated as:
*Niniejszym poświadcza się, że załączone tłumaczenie z języka angielskiego na polski wiernie oddaje treść dokumentu otrzymanego przez tutejsze biuro. Dokument ten określony jako:*

**Civil Cover Sheet**
*Pismo Przewodnie w Sprawie Cywilnej*

Tom McLean, an attorney with this company, certifies that Monika Darron, who translated this document, is fluent in Polish and standard North American English and qualified to translate.  He/she attests to the following:
*Tom McLean, Adwokat tej firmy, poświadcza, że Monika Darron, który(-a) przetłumaczył(-a) ten dokument, biegle posługuje się językiem polskim oraz północnoamerykańskim angielskim i jest uprawniony(-a) do wykonywania tłumaczeń.  Poświadcza on(-a), co następuje:*

"To the best of my knowledge, the accompanying text is a true, full and accurate translation of the specified document".
*„O ile mi wiadomo, dołączony tekst jest wiernym, pełnym i dokładnym tłumaczeniem danego dokumentu".*


**Signature of Tom McLean**
*Podpis Tom McLean*

Subscribed and sworn to before me this July 16, 2018.
*Podpisano i zaprzysiężono w mojej obecności dnia 16 lipca 2018*


**Maria Victoria Portuguez**
**Notary Public, State of Kansas**
**Qualified in Johnson County**
**Commission Expires July 12, 2021**

*Maria Victoria Portuguez*
*Notariusz Publiczny, Stan Kansas*
*Uprawniona w Hrabstwie Johnson*
*Licencja Wygasa dnia 12 lipca 2021 r.*

Sincerely,
*Z poważaniem,*

**Victor J. Hertz**
**President/*Prezes***

Sprawa 1:18-cv-01532-DLF      Dokument 1-1      Złożony 27.06.18      Strona 1 z 2

## PISMO PRZEWODNIE W SPRAWIE CYWILNEJ

**JS-44** (Rev. 6/17 DC)

| I. (a) POWODOWIE<br>Alexander Khochinsky | POZWANI<br>Rzeczpospolita Polska |
|---|---|
| (b) OKRĘG MIEJSCA ZAMIESZKANIA PIERWSZEGO Z WYMIENIONYCH POWODÓW  <u>Okręg Nowy Jork</u><br>(OPRÓCZ SPRAW POWODÓW Z USA) | OKRĘG MIEJSCA ZAMIESZKANIA PIERWSZEGO Z WYMIENIONYCH POZWANYCH  _____<br>(JEDYNIE W SPRAWACH POWODÓW Z USA)<br>UWAGA: W PRZYPADKU SPRAW DOTYCZĄCYCH KONFISKATY GRUNTU PODAĆ UMIEJSCOWIENIE<br>ODNOŚNEGO GRUNTU |
| (c) ADWOKACI (NAZWA FIRMY, ADRES li NUMER TELEFONU)<br>Nicholas M. O'Donnell<br>Sullivan &Worcester, LLP<br>One Post Office Square<br>Boston, MA 02109<br>617-338-2814 | ADWOKACI (JEŚLI ZNANI) |

### II. PODSTAWY JURYSDYKCJI
(UMIEŚCIĆ X JEDYNIE W JEDNYM POLU)

( ) 1. Rząd USA     (●) 3. Zagadnienie federalne
     Powód         (Rząd USA nie jest stroną)

( ) 1. Rząd USA     ( ) 4. Zróżnicowana właściwość
     Pozwany         (podać obywatelstwo stron
                 w punkcie III)

### III. OBYWATELSTWO GŁÓWNYCH STRON (UMIEŚCIĆ  X W JEDNYM POLU DLA POWODA I W JEDNYM POLU DLA POZWANEGO) JEDYNIE W SPRAWIE ZRÓŻNICOWANYCH!

|  | Powód | Pozw. |  | Powód | Pozw. |
|---|---|---|---|---|---|
| Obywatel tego stanu | ( ) 1 | ( ) 1 | Zarejestrowany lub prowadzący<br>działalność w tym stanie | ( ) 4 | ( ) 4 |
| Obywatel innego stanu | (●) 2 | ( ) 2 | Zarejestrowany lub prowadzący<br>działalność w innym stanie | ( ) 5 | ( ) 5 |
| Obywatel lub podwładny<br>obcego kraju | ( ) 3 | ( ) 3 |  |  |  |
|  |  |  | Obcy kraj | ( ) 6 | (●) 6 |

### IV. PRZYDZIAŁ SPRAWY I RODZAJ PROCESU
(Umieścić X w jednej kategorii A – N, która najlepiej określa postawy powództwa i jeden przy odpowiednim rodzaju procesu)

| ( ) A. Antytrustowa [sprawa] | ( ) B. Uszczerbek na zdrowiu/zaniedbanie w sztuce | ( ) C. Kontrola organu administracji | ( ) D. Tymczasowy nakaz ograniczenia kontaktu/ Tymczasowy zakaz |
|---|---|---|---|
| [ ] 410 Sprawa<br>antytrustowa | [ ] 310 samoloty<br>[ ] 315 odp. produc. części samolot.<br>[ ] 320 napaść, pomówienie i oszczerst.<br>[ ] 330 odp. feder. pracodawców<br>[ ] 340 jednostki pływające<br>[ ] 345 odp. produc. części jedn. pływ.<br>[ ] 350 pojazdy mechaniczne<br>[ ] 355 odp. produc. części poj. mech.<br>[ ] 360 inne uszkodz. ciała<br>[ ] 362 zaniedb w sztuce lekarskiej<br>[ ] 365 odp. produc. za wady wyrobów<br>[ ] 367 opieka zdowotna./ odp za uszk. ciała<br>     wyrob. farmaceut.<br>[ ] 368 odp. za uszk. ciała z pow. azbestu | [ ] 151 Ustawa o Medicare<br><br>**Ubezpieczenie Społeczne**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 chor. czarnych płuc (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Tytuł XVI<br>[ ] 865 RSI (405(g))<br>**Inne przepisy**<br>[ ] 891 Ust. dot. rolnictwa<br>[ ] 893 sprawy środowiska naturalnego<br>[ ] 890 inne ustawowe działania (jeśli<br>     dotyczą organu administracji) | Każdy rodzaj procesu z każdej kategorii może być umieszczony w tej kategorii przydziału sprawy<br><br>*(Jeśli jest to sprawa antytrustowa, to obowiązuje A)* |

| (●). E.    Ogólne Cywilne (Inne) | LUB | | ( ) F.   Ogólne Cywilne bez udziału adwokata |
|---|---|---|---|
| **Nieruchomości**<br>[ ] 210 konfiskata gruntu<br>[ ] 220 przejecie obciążonej nier.<br>[ ] 230 wynajem, dzierż. i eksmisja<br>[ ] 240 delikt wzgl. ziemi<br>[ ] 245 odp. deliktowa. za wady prod.<br>[ ] 290 wszystkie inne sprawy dot.<br>     Nieruchomości<br><br>**Mienie osobiste**<br>[ ] 370 inne oszustwa<br>[ ] 371 rzetelność w umowach kredyt.<br>[ ] 380 inne uszkodz. osobist. mienia<br>[ ] 385 uszkodz. mienia odp. za wady<br>     produktu | **Upadłość**<br>[ ] 422 Apelacja 27 USC 158<br>[ ] 423 wycofanie 28 USC 157<br><br>**Petycje więźniów**<br>[ ] 535 kara śmierci<br>[ ] 540 nakaz dla sądu niższej inst. i<br>     inne<br>[ ] 550 prawa obywatelskie<br>[ ] 555 warunki w więzieniu<br>[ ] 560 cywilne zatrzymanie –<br>     warunki ogran. Wolności<br><br>**Prawa majątkowe**<br>[ ] 820 prawa autorskie<br>[ ] 830 patenty<br>[ ] 835 patenty -- skrócone nowe<br>     podania dot. leków<br>[ ] 840 znaki firmowe | **Federalne procesy podatkowe**<br>[ ] 870 Podatki (powód lub pozw.  Z<br>     USA)<br>[ ] 871 IRS – trzecia strona 26 USC<br>     7609<br><br>**Przepadek/Kara**<br>[ ] 625 zajęcie mienia zw. z<br>     narkotykami 21 USC 881<br>[ ] 690 inne<br><br>**Inne przepisy**<br>[ ] 375 ust. o fałszywych<br>     roszczeniach<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 podział państwowy<br>[ ] 430 banki i bankowość<br>[ ] 450 Handel/ stawki ICC/itp..<br>[ ] 460 Deportacja | [ ] 462 podania o naturalizację<br>[ ] 465 inne działania imigracyjne<br>[ ] 470 ust. antykorupc. i działania<br>     przeciwko zorg.<br>     przestępczości<br>[ ] 480 kredyty konsumenckie<br>[ ] 490 telewizja satelitarna kablowa<br>[ ] 850 Papiery wartość./ towary/<br>     giełda<br>[ ] 896 arbitraż<br>[ ] 899 ustawa o postępowaniu<br>     admin./ rozpatrz. lub apelacja<br>     decyzji org.admin.<br>[ ] 950 konstytucyjność przepisów<br>     stanowych<br>[●] 890 Inne sprawy ustawowe (jeśli<br>     nie dot. kontroli org. admin.<br>     lub ustawy o prywatności) |

| ( ) G. *Habeas Corpus/2255* | ( ) H. *Dyskryminacja w miejscu zatrudnienia* | ( ) I. *Ustawa o prawie do informacji/Ust. o prywatności* | ( ) J. *Pożyczki studenckie* |
|---|---|---|---|
| [  ] 530 Habeas Corpus - ogólne<br>[  ] 510 Wniosek/unieważnienie wyroku<br>[  ] 463 Habeas corpus – zatrzymany obcokrajowiec | [  ] 442 prawa obywatelskie – zatrudnienie (kryteria: rasa, gender, płeć, pochodzenie narodowe, dyskryminacja, niepełnosprawność, wiek, wyznanie, odwet)<br><br>*(jeśli bez udziału adwokata, wybrać ten zestaw)* | [  ] 895 Ustawa o prawie od informacji<br>[  ] 890 inne ustawowe sprawy (jeśli dot. ustawy o prywatności)<br><br>*(jeśli bez udziału adwokata, wybrać ten zestaw)* | [  ] 152 odzyskanie niespłaconych pożyczek studenckich (nie dotyczy kombatantów) |
| ( ) K. *Praca/Ust. o zabezpieczeniach emerytur i dochodów pracowniczych. (nie-zatrudnienie)* | ( ) L. *Inne prawa cywilne (nie – zatrudnienie)* | ( ) M. *Kontrakty* | ( ) N . *Sąd o trzyosobowym składzie sędziowskim* |
| [  ] 710 Ust. o obowiązkach pracodawcy<br>[  ] 720 Relacje pracownik/kierown.<br>[  ] 740 ust. o pracy dla kolei<br>[  ] 751 ust. o urlopach rodzinnych i zdrowotnych.<br>[  ] 790 inne spory dot. pracy<br>[  ] 791 Ust. o zabezpieczeniach emerytur i dochodów pracowniczych | [  ] 441 Głosowanie (jeśli nie dot. ustawy o prawie do głosow.)<br>[  ] 443 warunki mieszkaniowe /udogodnienia<br>[  ] 440 inne praw obywatelskie<br>[  ] 445 ust. o niepełnosprawn. Amerykanach – zatrudnienie<br>[  ] 446 ust. o niepełnosprawn. Amerykanach – inne<br>[  ] 448 edukacja | [  ] 110 ubezpieczenie<br>[  ] 120 jednostki pływające<br>[  ] 130 ustawa Miller'a<br>[  ] 140 instrument płatniczy<br>[  ] 150 odzyskanie nadpłaty i wyegzekwowanie orzeczenia<br>[  ] 153 odzyskanie nadpłaty świadczeń kombatanckich<br>[  ] 160 procesy akcjonariuszy<br>[  ] 190 inne kontrakty<br>[  ] 195 kontrakty o odp. za wady produktów<br>[  ] 196 koncesje | [  ] 441 prawa obywatelskie – głosowanie (jeśli dot. ustawy o głosowaniu) |

**V. GENEZA**

| (●) 1 Nowe postępowanie | ( ) 2 post usunięte z sądu stanowego | ( ) 3 Post. powr. Z sądu apelacyjnego | ( ) 4 Post. ponownie otwarte lub przywrócone | ( ) 5 Post. przeniesione z innego sądu okręgowego (określić) | ( ) 6 Wielo-okręgowy spór sądowy | ( ) 7 Apelacja do sędziego okręgowego od sędziego magistratu | ( ) 8 Wielo-okręgowy spór sądowy – bezpośrednie złożenie |
|---|---|---|---|---|---|---|---|

**VI. PODSTAWY POWÓDZTWA** (PODAĆ PRZEPIS PRAWA CYWILNEGO, NA MOCY KTÓREGO SKŁADA SIĘ SPRAWA I NAPISAĆ KRÓTKIE OŚWIADCZENIE O PODSTAWACH)

Działanie odwetowe za korzystanie z Pierwszej Poprawki do Konstytucji Stanów Zjednoczonych (Postępowanie ekstradycyjne w odwecie za wypowiedź)

| **VII. ŻĄDANIE W POZWIE** | ZAZNACZYĆ JEŚLI JEST TO POZEW GRUPOWY ZGODNIE Z F.R.C.P. 23 | ŻĄDANIE _____ USD<br>ŻĄDANIE UDZIAŁU ŁAWY PRZYSIĘGŁYCH: | Zaznaczyć TAK jeśli żądanie w pozwie<br>TAK [  ]      NIE [X] |
|---|---|---|---|

| **VIII. POWIĄZANA(E) SPRAWA(Y) JEŚLI DOTYCZY** | (patrz instrukcje) | TAK [  ]    NIE [X] | Jeśli tak, wypełnić formularze dotyczące powiązanych spraw |
|---|---|---|---|

| **DATA:** 27.6.2018 | **PODPIS ADWOKATA WYSTĘPUJĄCEGO W SPRAWIE:** /p/ Nicholas M. O'Donnell |
|---|---|

**INSTRUKCJE WYPEŁNIANIA PISMA PRZEWODNIEGO W SPRAWIE CYWILNEJ JS-44**
Źródło dla wypełniania Pisma przewodniego w sprawie cywilnej

Pismo przewodnie w sprawie cywilnej JS 44 oraz informacje w nim zawarte nie zastępują ani nie uzupełniają dokumentów i doręczeń pism procesowych lub innych dokumentów wymaganych przez prawo, z wyjątkiem przypadków przewidzianych w lokalnych przepisach sądowych. Formularz ten, zatwierdzony przez Konferencję Sądowniczą Stanów Zjednoczonych we wrześniu 1974 r., jest wymagany w celu wszczęcia postępowania cywilnego i wykorzystywane przez Sekretarza sądu. W związku z tym To pismo przewodnie w sprawie cywilnej jest przedkładane Sekretarzowi sądu dla każdej skargi cywilnej. Poniżej podano wskazówki dotyczące wypełniania tego pisma. Wskazówki opatrzone są cyframi rzymskimi, które odpowiadają rubryk na arkuszu.

I.   OKRĘG MIEJSCA ZAMIESZKANIA PIERWSZEGO Z WYMIENIONYCH POWODÓW /POZWANYCH (b) Okręg zamieszkania: należy użyć 11001, by wskazać, że powód jest rezydentem Waszyngtonu, 88888, jeśli powód jest rezydentem Stanów Zjednoczonych, ale nie Waszyngtonu, i 99999, jeśli powód znajduje się poza obszarem Stanów Zjednoczonych.

III.   OBYWATELSTWO GŁÓWNYCH STRON. Tę część należy wypełnić jedynie, gdy zaznaczono zróżnicowaną właściwość jako postawę jurysdykcji w rubryce II.

IV.   PRZYDZIAŁ SPRAWY I RODZAJ PROCESU: Przydzielenie sędziego w danej sprawie zależało będzie od wybranej kategorii, która najlepiej opisuje główny powód wniesienia sprawy znajdujący się w pozwie. Można wybrać tylko jedną kategorię. Należy wybrać również, odpowiednio, jeden rodzaj procesu znajdujący się pod daną kategorią sprawy.

VI.   PODSTAWY POWÓDZTWA: należy podać przepis prawa cywilnego, na mocy którego składana jest sprawa i napisać krótkie oświadczenie o podstawach

VIII.   POWIĄZANA(E) SPRAWA(Y), JEŚLI DOTYCZY: Jeśli zaznaczono, że istnieje powiązana sprawa, należy wypełnić formularz, który można uzyskać w Sekretariacie Sądu.

Ze względu na potrzebę podania dokładnych i pełnych informacji, należy zapewnić dokładność podanych informacji przed podpisaniem niniejszego formularza.

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Alexander Khochinsky | Republic of Poland |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  New York County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
617-338-2814

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ◉ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place an X in one category, A-N, that best represents your Cause of Action and **one** in a corresponding Nature of Suit)

○ **A.  Antitrust**

☐ 410  Antitrust

○ **B.  Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C.  Administrative Agency Review**

☐ 151 Medicare Act

Social Security
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

◉ **E.  General Civil (Other)**          **OR**          ○ **F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **II.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General ☐ 510 Motion/Vacate Sentence ☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)  *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act)  *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 740 Labor Railway Act ☐ 751 Family and Medical Leave Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 440 Other Civil Rights ☐ 445 Americans w/Disabilities – Employment ☐ 446 Americans w/Disabilities – Other ☐ 448 Education | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
First Amendment Retaliation (Extradition Proceeding in Retaliation for Speech)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** **JURY DEMAND:** | Check **YES** only if demanded in complaint YES ☐   NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
| **DATE:** 6/27/2018 | **SIGNATURE OF ATTORNEY OF RECORD** | | /s/ Nicholas M. O'Donnell |

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of the case.

VI.   CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT C

Case No.:1:18-cv-01532-DLF

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*
*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signfication et à la notification à l'étranger des actes judiciaries ou extrajudiciares en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Nicholas M. O'Donnell, Esq. (DC Bar No. 1011832)<br>SULLIVAN & WORCESTER LLP<br>One Post Office Square<br>Boston, Massachusetts 02109<br>UNITED STATES OF AMERICA<br>Tel. 1.617.338.2800<br>Attorney of record for Plaintiff Alexander Khochinsky | HAGUE CENTRAL AUTHORITY FOR POLAND<br>Ministerstwo Sprawiedliwosci (Ministry of Justice)<br>Departament Wspólpracy Miêdzynarodowej i Prawa Człowieka<br>(Department of International Cooperation & Human Rights)<br>Al. Ujazdowskie 11<br>00-950 Warszawa<br>POLAND |

The undersigned applicant has the honour to transmit -in duplicate- the document listed below and, in conformity with article 5 or the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
**(identity and address)**
*Le requérant soussigné a l'honneur de faire parvenir en double exemplaire à l'autorité destinataire les documents ci-dessous énumérés, en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savoir:*

| *(Identité et adresse)* | REPUBLIC OF POLAND |
|---|---|
| | Ministry of Justice |
| | Al. Ujazdowskie 11, 00-950 Warszawa |
| | POLAND |

☒ **(a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.\***   **Service in accordance with**
*(a) selon les formes légales (article 5, alinéa premier, lettre a).*   **the laws of Poland for service of documents in its territory**

☐ ~~(b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)\*:~~
~~*(b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*~~ _____

☐ ~~(c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)\*:~~
~~*(c) le cas échéant, par remise simple (article 5, alinéa 2).*~~

The authority is requested to return or to have returned to the applicant a copy of the documents-and of the annexes\*--with a certificate as provided on the reverse side.
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte--et de ses annexes-- avec l'attestation figurant au verso.*

**THE PERSON AND ENTITIES WITHIN THE UNITED STATES COMPETENT TO FORWARD SERVICE REQUESTS PURSUANT TO ARTICLE 3 INCLUDE ANY COURT OFFICIAL; ANY ATTORNEY; OR ANY OTHER PERSON OR ENTITY AUTHORIZED BY THE RULES OF THE COURT.**
(See U.S. declaration to the 1965 Convention at the Hague Conference website: https://www.hcch.net/en/states/authorities/details3/?aid=279)

List of documents
*Enumération des pieces*

| | |
|---|---|
| Executed "Request," in duplicate | |
| "Certificate" (unexecuted), in duplicate | Done at  Boston, Massachusetts, U.S.A.  , the  9/13/18 |
| "Summary," in duplicate | *Fait à* _____, *le* _____ |
| "Notice," in duplicate | |
| Summons in a Civil Action, in English and Polish, in duplicate | **Signature and/or stamp.** |
| Complaint, in English and Polish, in duplicate | *Signature et/ou cachet.* |
| Civil Cover Sheet, in English and Polish, in duplicate | |

Nicholas M. O'Donnell, Esq. (DC Bar No. 1011832)
Attorney of record for Plaintiff Alexander Khochinsky

\*  Delete if inappropriate.
   *Rayer les mentions inutiles*

(Formerly OBD-116 which was formerly LAA-116,   USM-94
both of which may still be used)   (Est. 11/22/77)

# CERTIFICATE
*ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

**1) that the document has been served ***

*1. que la demande a été exécutée*

- - the (date)
- *- le (date)* _____
- - at (place, street, number)
- *- à (locatlité, rue numéro)* _____
_____

- - in one of the following methods authorised by article 5-
- *-dans une des formes suivantes prévues à l'article 5:*
  - ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
    - *a) selon les formes légales (article 5, alinéa premier, lettre a).*
  - ☐ (b) in accordance with the following particular method*:
    - *b) selon la forme particulière suivante :* _____
_____

  - ☐ (c) by delivery to the addressee, who accepted it voluntarily. *
    - *c) par remise simple*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*

  - -(identity and description of person)
    - *-(identité et qualité de la personne)* _____
_____

  - -relationship to the addressee (family, business, or other):
    - *-liens de parenté, de subordination ou autres, avec le destinataire de l'acte:* _____

**2) that the document has not been served, by reason of the following facts*:**

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*
_____
_____
_____
_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.
*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

**Annexes**
*Annexes*
**Documents returned:**
*Piéces renvoyées:*
_____
_____
_____

|  |  |
|---|---|
| Done at _____, the _____ | |
| *Fait à* _____, *le* _____ | |

**In appropriate cases, documents establishing the service:**
*Le cas échéant, les documents justificatifs de l'execution:*
_____

**Signature and / or stamp.**
*Signature et / ou cachet.*
_____
_____

*Delete if inappropriate.
*Rayer les mentions inutiles.*

2

Case No.:1:18-cv-01532-DLF

## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ELEMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'etranger des actes judiciaires et extrajudiciares en matière civile au commerciale. signée à La Haye, le 15 Novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

**Name and address of the requesting authority:** Nicholas M. O'Donnell, Esq. (DC Bar No. 1011832)
*Nom et adresse de l'autorité requérante :* SULLIVAN & WORCESTER LLP

One Post Office Square, Boston, Massachusetts 02109, U.S.A.

Tel. 1.617.338.2800

**Particulars of the parties*:**
*Identité des parties :* ALEXANDER KHOCHINSKY, *Plaintiff*

REPUBLIC OF POLAND, a foreign state, *Defendant*

### *JUDICIAL DOCUMENT***
### *ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :* To give notice to the Defendant of the commencement of a civil claim against it and to summon it to answer or otherwise respond.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige :* A civil action has been commenced against the Defendant.

**Date and place for entering appearance**:**
*Date et lieu de la comparution :* Within sixty (60) days after service of the Summons (not counting the day of receipt), Defendant must serve on the Plaintiff's Attorney (Sullivan & Worcester LLP) an Answer to the attached Complaint or a Motion under Rule 12 of the Federal Rules of Civil Procedure.  Defendant also must file its Answer or Motion with the United States District Court for the District of Columbia, located at: E. Barrett Prettyman U.S. Courthouse, 333 Connecticut Avenue, N.W., Washington, District of Columbia 20001, U.S.A.

**Court which has given judgment**:**
*Juridiction qui a rendu la décision :* N/A

**Date of judgment**:**
*Date de la décision :* N/A

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:* Within sixty (60) days after service of the Summons (not counting the day of receipt), Defendant must serve on the Plaintiff's Attorney (Sullivan & Worcester LLP) an Answer to the attached Complaint or a Motion under Rule 12 of the Federal Rules of Civil Procedure.  If Defendant fails to respond, Judgment by default may be entered against it for the relief demanded in the Complaint. Defendant also must file its Answer or Motion with the Court.

### *EXTRAJUDICIAL DOCUMENT***
### *ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte :* N/A

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte :* N/A

\* **If appropriate, identity and address of the person interested in the transmission of the document.**
*S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*
\*\* **Delete if inappropriate.**
*Rayer les mentions inutiles*

\*U.S. Government Printing Office: 1990-262-211/15302

3

Case No.:1:18-cv-01532-DLF

## NOTICE
### (recommended by the Fourteenth Session of Hague Conference of October, 1980)

**identity and address of the addressee**
*identité et adresse du destinataire*

---

REPUBLIC OF POLAND
Ministry of Justice
Al. Ujazdowskie 11
00-950 Warszawa
POLAND

---

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE "SUMMARY OF THE DOCUMENT TO BE SERVED" WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD, HOWEVER, READ THE DOCUMENT ITSELF CAREFULLY. IT M AY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

Neighborhood Legal Services Program of the District of Columbia
64 New York Avenue, NE
Washington, District of Columbia 20002
U.S.A.
Tel. 1.202.832.6577

### TRÈS IMPORT ANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES "ELÉMENTS ESSENTIELS DE L'ACTE" VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT. IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSS!BILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES :

Neighborhood Legal Services Program of the District of Columbia
64 New York Avenue, NE
Washington, District of Columbia 20002
U.S.A.
Tel. 1.202.832.6577

# EXHIBIT D

**Vicki Portuguez**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Monday, October 08, 2018 6:48 AM |
| **To:** | vportuguez@legallanguage.com |
| **Subject:** | FedEx Shipment 773413053720 Delivered |

# Your package has been delivered

Tracking # 773413053720



Ship date:
**Fri, 10/5/2018**

VICKI PORTUGUEZ
LEGAL LANGUAGE
SERVICES
SHAWNEE MISSION, KS
66208
US



Delivered

Delivery date:
**Mon, 10/8/2018 1:39 pm**

MINISTERSTWO
SPRAWIEDLIW MINISTRY
HAGUE CENTRAL
AUTHORITY FOR PO
AL. UJAZDOWSKIE 11
JUDICIAL-DEPT INT'L
COOPERATIO
WARSZAWA, 00950
PL

## Shipment Facts

Our records indicate that the following package has been delivered.

| | |
|---|---|
| Tracking number: | 773413053720 |
| Status: | Delivered: 10/08/2018 1:39 PM Signed for By: E.NIELIPINSKA |
| Reference: | Khochinsky v Republic of Polan |
| Signed for by: | E.NIELIPINSKA |
| Delivery location: | WARSZAWA, |
| Delivered to: | Receptionist/Front Desk |
| Service type: | FedEx International Priority® |
| Packaging type: | FedEx® Envelope |
| Number of pieces: | 1 |
| Weight: | 1.30 lb. |
| Special handling/Services: | Deliver Weekday |

**FedEx.**          Shipment Receipt

**Address Information**

| Ship to: | Ship from: |
|---|---|
| Ministerstwo Sprawiedliw Ministry o | Vicki Portuguez |
| HAGUE CENTRAL AUTHORITY FOR POLAND | Legal Language Services |
| Judicial-Dept Int'l Cooperation | 8014 State Line Road |
| Al. ujazdowskie 11 | Suite 110 |
| Warszawa, | Shawnee Mission,  KS |
| 00950 | 66208 |
| PL | US |
| 48226284431 | 9133413167 |

**Shipment Information:**
Tracking no.: 773413053720
Ship date: 10/05/2018
Estimated shipping charges:  0.00

**Package Information**
Pricing option:
Service type: International Priority
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 1.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: Third party
Bill duties/taxes/fees to: Third party
Your reference:  Khochinsky v Republic of Polan
P.O. no.:
Invoice no.:
Department no.:

---

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

# EXHIBIT E

**From:**          O'Donnell, Nicholas M.
**Sent:**          Wednesday, January 30, 2019 2:05 PM
**To:**            'sekretariat.dwmpc@ms.gov.pl'; 'Pawel.Kosmulski@ms.gov.pl'
**Subject:**       Alexander Khochinsky v. Republic of Poland

Dear Mr. Kosmulski,

I am writing in regards to Khochinsky v. Republic of Poland (Case No. 18-1532, pending in the United States District Court for the District of Columbia). I am Mr. Khochinsky's attorney.

In July and again in October 2018, the Complaint in this case was served on Poland pursuant to the Hague Convention. However, we have not received any certificate of service, and you did not respond to a recent email regarding this matter. Please mail and/or e-mail the certificate of service to the below address:

Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
USA

Kindly respond to this email to confirm that you are sending the certificate of service. If you are not the person who handles certificates of service, please let us know whom we should contact and provide that person's email address.

Please note that if the certificate of service is not received promptly, we will move for an entry of default in the U.S. Court handling this case.

Sincerely,

Nicholas O'Donnell


**Nicholas M. O'Donnell**
**Attorney at Law**

Partner
Sullivan & Worcester LLP
ZAG/S&W LLP
One Post Office Square
Boston, MA 02109

1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com

**BOSTON LONDON NEW YORK WASHINGTON, DC TEL AVIV**

**VISIT MY BLOG AT WWW.ARTLAWREPORT.COM**

LinkedIn Profile

# EXHIBIT F

| | |
|---|---|
| **From:** | Kosmulski Paweł  (DWMPC) <Pawel.Kosmulski@ms.gov.pl> |
| **Sent:** | Friday, February 08, 2019 11:57 AM |
| **To:** | O'Donnell, Nicholas M.; TMcLean@LegalLanguage.com |
| **Cc:** | correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt |
| **Subject:** | Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019) |
| | |
| **Importance:** | High |

Dear Mr O'Donnell, Dear Mr McLean,

Please excuse the delay in responding to your 29 and 30 January messages, which reached my inbox when I was out of the office (cf. autoresponder). The 7 January e-mail by Mr Tom McLean had been addressed to the Portuguese central authority by mistake and until the 29 January reminder I had no access to it.

I confirm, that the repeated 13 September 2018 request has reached our office on 8 October and after proof of formal correctness, has been transmitted to Warsaw Downtown District Court (Sąd Rejonowy dla Warszawy-Śródmieścia w Warszawie) on 26 October 2018. Since – according to Art. 6.4 of the 1965 Hague Service Convention – certificates of service are to be transmitted directly to the requesting authority, we have not been notified ex officio of the outcome of your service request. Pursuant to Polish information at https://www.hcch.net/en/states/authorities/details3/?aid=268 the execution process usually takes up 2-3 months. While this time has elapsed and you did not obtain the certificate confirming service or setting out the reasons which have prevented service, the case manager at the Ministry will contact the competent court early next week in order to try establishing the case reference and execution status. As soon as we have obtained these, you will be informed in due course.

Yours sincerely

Paweł Kosmulski
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka

tel:   22 23-90-593



Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

**From:** O'Donnell, Nicholas M. [mailto:nodonnell@sandw.com]
**Sent:** Wednesday, January 30, 2019 8:05 PM

**To:** Sekretariat DWMPC (DWMPC); Kosmulski Paweł (DWMPC)
**Subject:** Alexander Khochinsky v. Republic of Poland

Dear Mr. Kosmulski,

I am writing in regards to <u>Khochinsky v. Republic of Poland</u> (Case No. 18-1532, pending in the United States District Court for the District of Columbia). I am Mr. Khochinsky's attorney.

In July and again in October 2018, the Complaint in this case was served on Poland pursuant to the Hague Convention. However, we have not received any certificate of service, and you did not respond to a recent email regarding this matter. Please mail and/or e-mail the certificate of service to the below address:

Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
USA

Kindly respond to this email to confirm that you are sending the certificate of service. If you are not the person who handles certificates of service, please let us know whom we should contact and provide that person's email address.

Please note that if the certificate of service is not received promptly, we will move for an entry of default in the U.S. Court handling this case.

Sincerely,

Nicholas O'Donnell


**Nicholas M. O'Donnell**
**Attorney at Law**

Partner
Sullivan & Worcester LLP
ZAG/S&W LLP
One Post Office Square
Boston, MA 02109

1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com

**BOSTON LONDON NEW YORK WASHINGTON, DC TEL AVIV**


**VISIT MY BLOG AT WWW.ARTLAWREPORT.COM**

LinkedIn Profile

2

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Tuesday, January 29, 2019 6:48 PM
**To:** Kosmulski Paweł (DWMPC); Sekretariat DWMPC (DWMPC)
**Cc:** correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt
**Subject:** Request for update

Second request.

Dzień dobry,

Otrzymałeś załączony wniosek w dniu 8 października 2018 r. Czy pozwany został doręczony?

Dziękuję Ci


Tom McLean

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Monday, January 07, 2019 3:25 PM
**To:** 'correio@dgaj.mj.pt'; 'cji.dsaj@dgaj.mj.pt'
**Subject:** Request for update

Good afternoon,

You received the attached request for service on 8 October 2018. Has the defendant been served?

Thank you

Tom McLean
Senior Consultant for International Litigation Support

Legal Language Services
*Celebrating our 36th Year in Business*
8014 State Line Road, Suite 110
Leawood, KS 66208
913.341.3167
Toll Free in the US: 800.755.5775
tmclean@legallanguage.com

# EXHIBIT G

**From:**      Kosmulski Paweł (DWMPC) <Pawel.Kosmulski@ms.gov.pl>
**Sent:**      Monday, April 8, 2019 6:20 AM
**To:**        'nodonnell@sandw.com'
**Subject:**   Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref.
               DWMPC-V.8091.69.2019)

Dear Mr O'Donnell,

With reference to the correspondence below I would like to inform you, that the Polish court in charge of the service process, namely Sąd Rejonowy dla Warszawy-Śródmieścia w Warszawie, is still proceeding with the case. As soon as the Polish central authority under the 1965 Hague Convention obtains any information as to issuance of the certificate in accordance with art. 6 of the abovementioned Convention, we will let you know without delay.

Yours sincerely,


**PAWEŁ KOSMULSKI**
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka
 tel:    22 23-90-593



Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

**From:** Kosmulski Paweł (DWMPC)
**Sent:** Friday, February 8, 2019 5:57 PM
**To:** 'nodonnell@sandw.com'; 'TMcLean@LegalLanguage.com'
**Cc:** correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt
**Subject:** Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019)
**Importance:** High

Dear Mr O'Donnell, Dear Mr McLean,

Please excuse the delay in responding to your 29 and 30 January messages, which reached my inbox when I was out of the office (cf. autoresponder). The 7 January e-mail by Mr Tom McLean had been addressed to the Portuguese central authority by mistake and until the 29 January reminder I had no access to it.
I confirm, that the repeated 13 September 2018 request has reached our office on 8 October and after proof of formal correctness, has been transmitted to Warsaw Downtown District Court (Sąd Rejonowy dla Warszawy-Śródmieścia w Warszawie) on 26 October 2018. Since – according to Art. 6.4 of the 1965 Hague Service Convention – certificates of service are to be transmitted directly to the requesting authority, we have not been notified ex officio of the outcome of your service request. Pursuant to Polish information at https://www.hcch.net/en/states/authorities/details3/?aid=268 the execution process usually takes up 2-3 months. While this time has elapsed and you did not obtain the certificate confirming service or setting out the reasons which have prevented service, the case manager at the Ministry will contact the competent court early next week in order to try establishing the case reference and execution status. As soon as we have obtained these, you will be informed in due course.

Yours sincerely

PAWEŁ KOSMULSKI
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka
 tel:    22 23-90-593

MINISTERSTWO
SPRAWIEDLIWOŚCI
www.ms.gov.pl

*niepodległa*      POLSKA
                   STULECIE ODZYSKANIA
                   NIEPODLEGŁOŚCI

Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

**From:** O'Donnell, Nicholas M. [mailto:nodonnell@sandw.com]
**Sent:** Wednesday, January 30, 2019 8:05 PM
**To:** Sekretariat DWMPC (DWMPC); Kosmulski Paweł (DWMPC)
**Subject:** Alexander Khochinsky v. Republic of Poland

Dear Mr. Kosmulski,

I am writing in regards to Khochinsky v. Republic of Poland (Case No. 18-1532, pending in the United States District Court for the District of Columbia). I am Mr. Khochinsky's attorney.

In July and again in October 2018, the Complaint in this case was served on Poland pursuant to the Hague Convention. However, we have not received any certificate of service, and you did not respond to a recent email regarding this matter. Please mail and/or e-mail the certificate of service to the below address:

Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109
USA

Kindly respond to this email to confirm that you are sending the certificate of service. If you are not the person who handles certificates of service, please let us know whom we should contact and provide that person's email address.

Please note that if the certificate of service is not received promptly, we will move for an entry of default in the U.S. Court handling this case.

Sincerely,

Nicholas O'Donnell


**Nicholas M. O'Donnell**
**Attorney at Law**

Partner
Sullivan & Worcester LLP
ZAG/S&W LLP

One Post Office Square
Boston, MA 02109

1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com

**BOSTON   LONDON   NEW YORK   WASHINGTON, DC   TEL AVIV**

**VISIT MY BLOG AT WWW.ARTLAWREPORT.COM**

 LinkedIn Profile

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

---

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Tuesday, January 29, 2019 6:48 PM
**To:** Kosmulski Paweł (DWMPC); Sekretariat DWMPC (DWMPC)
**Cc:** correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt
**Subject:** Request for update

Second request.

Dzień dobry,

Otrzymałeś załączony wniosek w dniu 8 października 2018 r. Czy pozwany został doręczony?

Dziękuję Ci


Tom McLean

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Monday, January 07, 2019 3:25 PM
**To:** 'correio@dgaj.mj.pt'; 'cji.dsaj@dgaj.mj.pt'
**Subject:** Request for update

Good afternoon,

You received the attached request for service on 8 October 2018. Has the defendant been served?

Thank you

Tom McLean
Senior Consultant for International Litigation Support

Legal Language Services

*Celebrating our 36th Year in Business*

8014 State Line Road, Suite 110
Leawood, KS  66208
913.341.3167
Toll Free in the US: 800.755.5775
tmclean@legallanguage.com

# EXHIBIT H

| **From:** | O'Donnell, Nicholas M. <nodonnell@sandw.com> |
| **Sent:** | Wednesday, April 17, 2019 1:52 PM |
| **To:** | 'Kosmulski Pawel (DWMPC)' <Pawel.Kosmulski@ms.gov.pl> |
| **Subject:** | RE: Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019) |
| **Attach:** | Entry of Default against Poland(B2385124).pdf |

Dear Mr. Kosmulski,

Thank you for your message. It has been nearly a year since the package was first delivered to the Republic of Poland and more than six months since it was delivered a second time, as a result of which the District Court found the Republic of Poland in default on March 12, 2019 (see attached). We still seek the certificate pursuant to Section 6 of the 1965 Hague Convention, as to which we still have not received any specific information. Failing receipt of the certificate within seven (7) days, my client will understand that Poland's willful delays are, in fact, a refusal to provide a certificate, and he will seek final judgment against Poland.

Sincerely,

Nicholas O'Donnell

**Nicholas M. O'Donnell**
**Attorney at Law**
Partner
Sullivan & Worcester LLP
ZAG/S&W LLP
One Post Office Square
Boston, MA 02109
1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com
**BOSTON LONDON NEW YORK WASHINGTON, DC TEL AVIV**
**VISIT MY BLOG AT WWW.ARTLAWREPORT.COM**

 LinkedIn Profile

**From:** Kosmulski Paweł (DWMPC) [mailto:Pawel.Kosmulski@ms.gov.pl]
**Sent:** Monday, April 08, 2019 6:20 AM
**To:** 'nodonnell@sandw.com'
**Subject:** Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019)

Dear Mr O'Donnell,

With reference to the correspondence below I would like to inform you, that the Polish court in charge of the service process, namely Sąd Rejonowy dla Warszawy-Śródmieścia w Warszawie, is still proceeding with the case. As soon as the Polish central authority under the 1965 Hague Convention obtains any information as to issuance of the certificate in accordance with art. 6 of the abovementioned Convention, we will let you know without delay.

Yours sincerely,

PAWEŁ KOSMULSKI
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka

tel:    22 23-90-593





Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

**From:** Kosmulski Paweł (DWMPC)
**Sent:** Friday, February 8, 2019 5:57 PM
**To:** 'nodonnell@sandw.com'; 'TMcLean@LegalLanguage.com'
**Cc:** correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt
**Subject:** Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019)
**Importance:** High

Dear Mr O'Donnell, Dear Mr McLean,

Please excuse the delay in responding to your 29 and 30 January messages, which reached my inbox when I was out of the office (cf. autoresponder). The 7 January e-mail by Mr Tom McLean had been addressed to the Portuguese central authority by mistake and until the 29 January reminder I had no access to it.

I confirm, that the repeated 13 September 2018 request has reached our office on 8 October and after proof of formal correctness, has been transmitted to Warsaw Downtown District Court (Sąd Rejonowy dla Warszawy-Śródmieścia w Warszawie) on 26 October 2018. Since – according to Art. 6.4 of the 1965 Hague Service Convention – certificates of service are to be transmitted directly to the requesting authority, we have not been notified ex officio of the outcome of your service request. Pursuant to Polish information at https://www.hcch.net/en/states/authorities/details3/?aid=268 the execution process usually takes up 2-3 months. While this time has elapsed and you did not obtain the certificate confirming service or setting out the reasons which have prevented service, the case manager at the Ministry will contact the competent court early next week in order to try establishing the case reference and execution status. As soon as we have obtained these, you will be informed in due course.

Yours sincerely
**PAWEŁ KOSMULSKI**
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka
tel:   22 23-90-593

MINISTERSTWO
SPRAWIEDLIWOŚCI

Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

**From:** O'Donnell, Nicholas M. [mailto:nodonnell@sandw.com]
**Sent:** Wednesday, January 30, 2019 8:05 PM
**To:** Sekretariat DWMPC (DWMPC); Kosmulski Paweł (DWMPC)
**Subject:** Alexander Khochinsky v. Republic of Poland

Dear Mr. Kosmulski,

I am writing in regards to Khochinsky v. Republic of Poland (Case No. 18-1532, pending in the United States District Court for the District of Columbia). I am Mr. Khochinsky's attorney.

In July and again in October 2018, the Complaint in this case was served on Poland pursuant to the Hague Convention. However, we have not received any certificate of service, and you did not respond to a recent email regarding this matter. Please mail and/or e-mail the certificate of service to the below address:

Nicholas M. O'Donnell
Sullivan & Worcester LLP
One Post Office Square

Boston, MA 02109

USA

Kindly respond to this email to confirm that you are sending the certificate of service. If you are not the person who handles certificates of service, please let us know whom we should contact and provide that person's email address. Please note that if the certificate of service is not received promptly, we will move for an entry of default in the U.S. Court handling this case.

Sincerely,

Nicholas O'Donnell

**Nicholas M. O'Donnell**
**Attorney at Law**
Partner
Sullivan & Worcester LLP
ZAG/S&W LLP
One Post Office Square
Boston, MA 02109
1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com
**BOSTON LONDON NEW YORK WASHINGTON, DC TEL AVIV**
**VISIT MY BLOG AT WWW.ARTLAWREPORT.COM**

 LinkedIn Profile

This message is intended to be confidential and may be legally privileged. It is intended solely for the addressee. If you are not the intended recipient, please delete this message from your system and notify us immediately. Any disclosure, copying, distribution or action taken or omitted to be taken by an unintended recipient in reliance on this message is prohibited and may be unlawful.

---

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Tuesday, January 29, 2019 6:48 PM
**To:** Kosmulski Paweł (DWMPC); Sekretariat DWMPC (DWMPC)
**Cc:** correio@dgaj.mj.pt; cji.dsaj@dgaj.mj.pt
**Subject:** Request for update

Second request.

Dzień dobry,
Otrzymałeś załączony wniosek w dniu 8 października 2018 r. Czy pozwany został doręczony?
Dziękuję Ci

Tom McLean

**From:** Tom McLean [mailto:tmclean@legallanguage.com]
**Sent:** Monday, January 07, 2019 3:25 PM
**To:** 'correio@dgaj.mj.pt'; 'cji.dsaj@dgaj.mj.pt'
**Subject:** Request for update

Good afternoon,

You received the attached request for service on 8 October 2018. Has the defendant been served?

Thank you

Tom McLean

Senior Consultant for International Litigation Support

Legal Language Services

*Celebrating our 36th Year in Business*

8014 State Line Road, Suite 110

Leawood, KS 66208
913.341.3167
Toll Free in the US: 800.755.5775
tmclean@legallanguage.com

Default - Rule 55A (CO 40 Revised-4/2011)

# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

ALEXANDER KHOCHINSKY

_____
                 Plaintiff(s)

                                                    Civil Action: 18-cv-1532-DLF
                                                                  _____
         v.


REPUBLIC OF POLAND

_____
                 Defendant(s)



**RE:** REPUBLIC OF POLAND


## DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though

duly served with summons and copy of the complaint      on      October 8, 2018      , and an affidavit

on behalf of the plaintiff having been filed, it is this 12th day of      March      , 2019 declared that

defendant(s) is/are in default.



                                        ANGELA D. CAESAR, Clerk


                             By: _____/s/ Tonya Hightower_____
                                        Deputy Clerk

# EXHIBIT I

| From: | Kosmulski Paweł (DWMPC) <Pawel.Kosmulski@ms.gov.pl> |
|---|---|
| Sent: | Wednesday, April 24, 2019 10:19 AM |
| To: | O'Donnell, Nicholas M. <nodonnell@sandw.com> |
| Subject: | Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019) |
| Attach: | Entry of Default against Poland(B2385124).pdf |

Dear Mr. O'Donnell,

Following my e-mail dated 8th April 2019 please be informed, that the District Court in Warszawa – Śródmieście has just issued the relevant Certificate of service. Pursuant to Art. 6 para 4 of the Hague Convention 1965 the Certificate is being transmitted to your office by the court directly by post.

In relation to your e-mail of 17th April 2019, please note that your first request was of no effect because of shortcomings and irregularities precisely pointed out in our letter of 20 August 2018. As the other request was correct in terms of formal requirements, it has been promptly transmitted to the competent court to be processed (as you were informed in due course). Since then the service has been executed by an impartial and independent court.

When it comes to requests for service of documents under the Hague Convention 1965, I am responsible only for performing the tasks of the central authority, to which these requests may be sent (see Art. 2 of the Convention). Such requests are subsequently transmitted to respective district courts (sąd rejonowy) that are in charge of effecting the service and issuance of the certificate of service. Please consider the following:
- the designation of the authority competent to complete the certificate pursuant to Article 6 in Poland: https://www.hcch.net/en/states/authorities/details3/?aid=431
- the methods of service Art. 5(1)(2) in Poland: https://www.hcch.net/en/states/authorities/details3/?aid=268

This rules are applicable without fail in every case concerning service of documents under Hague Convention 1965 via the central authority. This system is completely in compliance with provisions of the Convention that expressly stipulates that a central authority may either serve the documents itself or arrange it by an appropriate agency (Art. 5.1 of the Convention). Moreover, in practice of the Convention service within 6 months is common in many states and not considered as lengthy.

Please note that the issue of representation of foreign states before courts is manifestly outside of the competencies of the central authority under the Hague Convention 1965. Thus, I am not a right person any allegations of this kind may be addressed to. So, with regard to the remaining allegations in your e-mail I am not allowed to take any stance.

Kind regards


PAWEŁ KOSMULSKI
Główny Specjalista
Wydział Międzynarodowej Współpracy Prawnej w sprawach Cywilnych
Departament Współpracy Międzynarodowej i Praw Człowieka
 tel:   22 23-90-593



*niepodległa* | POLSKA
STULECIE ODZYSKANIA
NIEPODLEGŁOŚCI

Al. Ujazdowskie 11
00-950 Warszawa
tel: +48 22 52 12 888

---

**From:** O'Donnell, Nicholas M. [mailto:nodonnell@sandw.com]
**Sent:** Wednesday, April 17, 2019 7:52 PM
**To:** Kosmulski Paweł (DWMPC)
**Subject:** RE: Alexander Khochinsky v. Republic of Poland service of documents to Poland (our ref. DWMPC-V.8091.69.2019)

Dear Mr. Kosmulski,

Thank you for your message.  It has been nearly a year since the package was first delivered to the Republic of Poland and more than six months since it was delivered a second time, as a result of which the District Court found the Republic of Poland in default on March 12, 2019 (see attached).  We still seek the certificate pursuant to Section 6 of the 1965 Hague Convention, as to which we still have not received any specific information.  Failing receipt of the certificate within seven (7) days, my client will understand that Poland's willful delays are, in fact, a refusal to provide a certificate, and he will seek final judgment against Poland.

Sincerely,

Nicholas O'Donnell

**Nicholas M. O'Donnell**
**Attorney at Law**

Partner
Sullivan & Worcester LLP
ZAG/S&W LLP
One Post Office Square
Boston, MA 02109

1633 Broadway
New York, NY 10019
T 617 338 2814/212 660 3000
F 617 338 2880
nodonnell@sandw.com
www.sandw.com

BOSTON   LONDON   NEW YORK   WASHINGTON, DC   TEL AVIV

VISIT MY BLOG AT WWW.ARTLAWREPORT.COM

LinkedIn Profile

Default - Rule 55A (CO 40 Revised-4/2011)

# UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

ALEXANDER KHOCHINSKY

_____
                    Plaintiff(s)

                                                    Civil Action: 18-cv-1532-DLF

         v.

REPUBLIC OF POLAND

_____
                    Defendant(s)


**RE:** REPUBLIC OF POLAND


# DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though duly served with summons and copy of the complaint       on       October 8, 2018       , and an affidavit on behalf of the plaintiff having been filed, it is this  12th  day of       March       ,  2019  declared that defendant(s) is/are in default.


                                        ANGELA D. CAESAR, Clerk


                                        By: _____ /s/ Tonya Hightower _____
                                                   Deputy Clerk