UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEXANDER KHOCHINSKY,

    *Plaintiff*,

v.

REPUBLIC OF POLAND,

    *Defendant.*

No. 18-cv-1532 (DLF)

**MEMORANDUM OPINION**

Plaintiff Alexander Khochinsky brought this suit in 2018 against the Republic of Poland. Compl. ¶ 1, Dkt. 1. According to Khochinsky, Poland has retaliated against him by seeking his extradition in response to his attempt to procure restitution for the seizure of his mother's land during World War II. *Id.* ¶ 4–18. Khochinsky's complaint alleges claims against Poland for: (1) First Amendment retaliation, *id.* ¶ 117–25, (2) quiet title over the painting *Girl with Dove*, *id.* ¶ 126–30, (3) tortious interference with advantageous relations, *id.* ¶ 131–35, (4) aiding and abetting trespass, *id.* ¶ 136–43, and (5) abuse of process, *id.* ¶ 144–52. On April 23, 2019, Poland moved to dismiss the complaint for lack of subject matter jurisdiction. Poland's Mot. to Dismiss, Dkt. 21. Because the Foreign Sovereign Immunities Act ("FSIA") precludes this Court from exercising jurisdiction over any of Khochinsky's claims, the Court will grant Poland's motion and dismiss the case. *See* Fed. R. Civ. P. 12(b)(1), (h)(3).

I. **BACKGROUND**

In considering Poland's motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all of the material allegations in Khochinsky's complaint. *See, e.g.*, *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008). The relevant facts are as

follows.

    A.      **Factual Background**

Alexander Khochinsky recently acquired his American citizenship after living in New York City as a foreign national for many years. *See* Compl. ¶ 118. Khochinsky's mother, Maria Khochinskaya, was a Polish Jew born in the town of Przemysl, where her family owned land and a house. *Id.* ¶ 5. In 1939, Germany invaded Poland, and Maria became a Soviet citizen after the Soviet Union annexed a portion of Przemysl containing her family's land. *Id.* ¶ 30–33. On June 20, 1941, Maria and her grandmother traveled east to Lviv to visit her mother for the Sabbath observance. *Id.* ¶ 34. The very next day, Germany invaded the Soviet Union. *Id.* ¶ 35. All of Maria's family members who remained in Przemysl were murdered by the Nazis, and so Maria became the heir to her family's property there. *Id.* ¶ 67. Maria ultimately died in 1989, when her rights in the property passed to Khochinsky. *Id.* ¶ 68.

Khochinsky returned to Przemysl in the 1990s with his wife and his own son. *Id.* ¶ 69. Yet upon his return, he discovered that his mother's home had been destroyed, and a Catholic church stood on the land instead. *Id.* Neither Maria nor her family were ever compensated for the seized property. *Id.* ¶ 70.

Believing that Poland would exercise a hostile attitude towards a Jewish restitution claim, Khochinsky initially decided not to seek compensation for the seized land. *Id.* ¶ 71. But this attitude changed around 2010, when Khochinsky learned that a painting similar to one he had previously inherited had been reported missing from Poland. *Id.* ¶ 74. The missing painting had belonged to Poland's Wielkopolskie Museum, which had acquired the painting in 1931. *Id.* ¶ 75. The painting was allegedly removed from the museum for protection and looted by the Nazis sometime during World War II. *Id.* ¶ 75. The missing painting was similar to Khochinsky's

2

*Girl with Dove*, which he had inherited pursuant to his father's will in 1991. *Id.* ¶ 73. Khochinsky's father told him that he had acquired *Girl with Dove* after World War II, and that the painting had previously been in Germany. *Id.* ¶ 76. Khochinsky claims not to know whether *Girl with Dove* is in fact the missing painting and believes that it is not the missing work. *Id.* ¶ 78–79.

Nevertheless, Khochinsky believed that he could offer the painting to Poland as a "worthy substitute." *Id.* ¶ 79. By doing so, he hoped that his discussions with Poland for Maria's land could be more fruitful. *Id.* ¶ 80. And so he offered *Girl with Dove* to Poland in exchange for restitution. *Id.* ¶ 81. In 2010, a Polish representative indicated a willingness to negotiate, but sent an expert to Khochinsky's gallery to evaluate the painting first. *Id.* ¶ 82–83. The expert concluded that *Girl with Dove* was indeed the missing artwork, but he did not inform Khochinsky of his conclusion at that time. *Id.* ¶ 84.

B. **The Extradition Proceeding**

Khochinsky alleges that Poland has pursued a retaliatory extradition proceeding against him because of his ownership of the painting and his attempts to negotiate for restitution. *See id.* ¶ 85–116. A Polish Court initially accused Khochinsky of knowingly and unlawfully purchasing the painting in January 2013. *Id.* ¶ 86. A "Wanted Person Notice" went out for Khochinsky's arrest, *id.* ¶ 93, and then Poland submitted a request to the United States for Khochinsky's extradition in July 2013, *id.* ¶ 94–96. Poland informed the U.S. Department of State that Khochinsky had acquired *Girl with Dove* "despite being aware of the fact that the painting originated from a prohibited act—looting of property in 1943 by the then authorities of the German Third Reich." *Id.* ¶ 96. Khochinsky claims that this "accusation was baseless and purely in bad faith." *Id.* ¶ 97.

3

In 2015, an Assistant United States Attorney filed a petition for a certificate of extraditability on behalf of Poland in the United States District Court for the Southern District of New York. *Id.* ¶ 98. Khochinsky was taken from his New York City home in handcuffs and was imprisoned from February 26 to March 9, 2015; he was then subject to house arrest and electronic monitoring for several months thereafter. *Id.* ¶ 100–04. In April 2015, Poland sent a document to the Department of Justice stating that it could not "clearly rule out or confirm" Khochinsky's version of the events related to his acquisition of *Girl with Dove*. *Id.* ¶ 107. Thus, during a June 17, 2015 hearing in the extradition proceeding, "the Assistant United States Attorney representing Poland's interests acknowledged: 'I do not believe there is evidence in the record that goes directly to Khochinsky's knowledge prior to his sending an email to the Polish embassy in Moscow in 2010.'" *Id.* ¶ 110.

The District Court ultimately concluded that the United States lacked probable cause to extradite Khochinsky. *Id.* ¶ 112. *See generally In re Extradition of Khochinsky*, 116 F. Supp. 3d 412 (S.D.N.Y. 2015).

C. **The Current Proceeding**

On June 27, 2018, Khochinsky filed the instant complaint with this Court claiming that "substantial damage" had been done by the allegedly baseless extradition proceeding. Compl. ¶ 115. Khochinsky's complaint asserts five claims against Poland. First, Khochinsky alleges that Poland infringed his First Amendment rights while he was living as a foreign national in New York. *See id.* ¶ 117–25. In particular, he contends that "the extradition was in retaliation for Khochinsky's speech about the Holocaust in Poland and Poland's restitution obligations" and that "Poland deliberately . . . used the extradition process and related criminal proceeding to deprive Khochinsky of his rights under the First Amendment." *Id.* ¶ 120, 122. Second,

4

Khochinsky presses a quiet title action for the painting, *Girl with Dove*. *See id.* ¶ 126–30. Third, Khochinsky alleges that, as an owner of an art business that depended on business trips and visits to art galleries, his imprisonment and house arrest from the extradition proceeding tortiously interfered with his business relations. *See id.* ¶ 131–35. Fourth, Khochinsky alleges that Poland's conduct aided and abetted trespass of Maria's land. *See id.* ¶ 136–43. And fifth, Khochinsky alleges that "Poland used legal process in the United States, including by and through the actions of the Assistant United States Attorney who represented Poland during extradition proceedings, to obtain an improper goal." *Id.* ¶ 145. With respect to this abuse-of-process claim, Khochinsky contends that Poland "used the extradition proceedings as a chilling demonstration of state power," that Poland "used the menace of extradition, coupled with actual imprisonment, to punish Khochinsky" for his speech, and that "Poland used this public proceeding to warn other Jews." *Id.* ¶ 146–48. Khochinsky alleges that throughout this process, "Poland fabricated criminal charges and made false statements." *Id.* ¶ 149.

On March 12, 2019, the Clerk of Court entered default against Poland. Entry of Default, Dkt. 14. On April 23, 2019, Poland moved to vacate the clerk's entry of default, Mot. to Vacate Entry of Default, Dkt. 14, and to dismiss all of Khochinsky's claims for lack of subject matter jurisdiction, Mot. to Dismiss; *see* Fed. R. Civ. P. 12(b)(1).[1]

---

[1] On April 25, 2019, Khochinsky also moved for entry of partial default judgment against Poland, Mot. for Partial Default Judgment, Dkt. 22. Because the Court concludes that it lacks subject matter jurisdiction over this lawsuit, it will deny Khochinsky's motion as moot. *See, e.g.*, *Terry v. Dewine*, 75 F. Supp. 3d 512, 530 (D.D.C. 2014) ("Given that the Court lacks jurisdiction over all of the claims in this action . . . a default judgment in this case, against any of the defendants, would be improper.").

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 55(c)

Federal Rule of Civil Procedure 55(c) permits the court to set aside an entry of default for "good cause shown." Fed. R. Civ. P. 55(c). "Though the decision lies within the discretion of the trial court, exercise of that discretion entails consideration of whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 373 (D.C. Cir. 1980) (citations and internal quotation marks omitted). "On a motion for relief from the entry of default . . ., all doubts are resolved in favor of the party seeking relief." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).

### B. Federal Rule of Civil Procedure 12

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss the plaintiff's complaint for lack of subject-matter jurisdiction. In evaluating a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). Further, under Rule 12(b)(1), the court "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), and "a court may consider such

materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### C. Subject Matter Jurisdiction under the FSIA

"In the United States, the sole avenue for a court to obtain jurisdiction over claims against a foreign state or its agencies and instrumentalities is through the FSIA." *Simon v. Republic of Hung.*, 812 F.3d 127, 135 (D.C. Cir. 2016). "The FSIA establishes a default rule granting foreign sovereigns immunity from the jurisdiction of United States courts." *Id.*; *see* 28 U.S.C. § 1604. The general rule is subject to a number of exceptions, *see* 28 U.S.C. §§ 1605–07, but "claims against foreign sovereigns that do not fall within the ambit of an FSIA exception are barred," *Simon*, 812 F.3d at 141 (internal quotation marks and alterations omitted).

Khochinsky claims that his lawsuit implicates three exceptions to the default rule of foreign sovereign immunity. First, the implicit waiver exception applies when "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605. Second, the counterclaim exception applies "[i]n any action brought by a foreign state, or in which a foreign state intervenes," and withdraws sovereign immunity for "any counterclaim . . . arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state." 28 U.S.C. § 1607. Finally, the noncommercial tort exception applies to cases "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). The noncommercial tort exception does not apply, however, to "any claim

arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B).

## III. ANALYSIS

### A. Motion to Vacate the Entry of Default

In considering whether to set aside an entry of default for good cause shown, courts must consider whether the default was willful, whether a set-aside would prejudice the plaintiff, and whether the alleged defense is meritorious. *Keegel*, 636 F.2d at 373. These considerations support vacating the entry of default here. The complications with service of process described in the parties' briefs suggest that Poland's failure to respond was the result of confusion rather than a willful refusal to participate in the lawsuit. More importantly, for the reasons described below, the Court finds that Poland's defense—lack of subject matter jurisdiction—was indeed meritorious. Given the absence of jurisdiction, Khochinsky could not have obtained judgment in this case anyway, and therefore suffers no prejudice from the vacatur of Poland's default. Accordingly, the Court finds that Poland has shown good cause to set aside the entry of default.

### B. Motion to Dismiss

Below, the Court addresses each of the FSIA exceptions that Khochinsky claims provides it with subject matter jurisdiction over the instant lawsuit. Because none of these FSIA exceptions apply here, the Court concludes that it lacks subject matter jurisdiction over Khochinsky's lawsuit and will grant Poland's motion to dismiss on that basis.

#### 1. The Implicit Waiver Exception

Khochinsky first contends that "Poland implicitly waived its sovereign immunity" by bringing extradition proceedings against him in the Southern District of New York. Opp'n to Mot. to Dismiss, at 8; *see In re Extradition of Khochinsky*, 116 F. Supp. 3d 412 (S.D.N.Y. 2015).

He argues that "by using the U.S. courts to further its wrongful conduct, Poland implicitly waived its sovereign immunity as to *all* the claims against it." Opp'n to Mot. to Dismiss, at 8 (emphasis in original). The Court disagrees.

The D.C. Circuit "follow[s] the virtually unanimous precedents construing the implied waiver provision narrowly." *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999) (internal quotation marks and citation omitted). It "rarely find[s] that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended." *Id.* (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990)). Indeed, it has "found an implicit waiver of sovereign immunity in only three situations." *Gutch v. Fed. Republic of Germany*, 255 F. App'x 524, 525 (D.C. Cir. 2007). These include instances where: (1) "a foreign state has filed a responsive pleading without raising the defense of sovereign immunity," (2) "the state has agreed to arbitrate" in the United States, or (3) the state has agreed "to adopt a particular choice of law." *World Wide Minerals, LTD. v. Republic of Kaz.*, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002); *see also* H.R. Rep. No. 1487, at 18 (1976) (listing these three examples of implied waiver). None of these circumstances are at issue here. And the D.C. Circuit "ha[s] been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity." *World Wide Minerals*, 296 F.3d at 1161 n.11 (internal quotation marks omitted).

The Court finds that Poland did not waive its sovereign immunity by seeking to extradite Khochinsky. It merely exercised its rights under the U.S.-Poland Extradition Treaty by "request[ing] for extradition . . . through the diplomatic channel." Extradition Treaty Between the United States of America and the Republic of Poland, U.S.-Pol., art. 9, July 10, 1996, T.I.A.S. No. 99-917; *see Khochinsky*, 116 F. Supp 3d at 414 (noting that Poland requested that

the U.S. government petition "for a certification that Alexander Khochinsky is extraditable pursuant to the U.S.-Poland Extradition Treaty"). This diplomatic undertaking is not "strong evidence" that Poland "intended" to relinquish the FSIA's protections. *Creighton*, 181 F.3d at 122 (internal quotation marks omitted). Rather, "extradition is a diplomatic process carried out through the powers of the executive, not the judicial, branch." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003) (finding that Australia did not waive sovereign immunity by seeking extradition of the plaintiff); *see also Shapiro v. Sec'y of State*, 499 F.2d 527, 531 (D.C. Cir. 1974) (explaining that "extradition is ordinarily a matter within the exclusive purview of the Executive"). Indeed, it would be "contrary to the concepts of comity and mutual respect between nations to hold that a country that calls upon [the United States] to assist in extradition only does so at the price of losing its sovereign immunity and of submitting to the domestic jurisdiction of [United States] courts in matters connected to the extradition request." *Blaxland*, 323 F.3d at 1209 (quoting *Schreiber v. Canada (Attorney General)*, [2002] S.C.C. 62 (Can.)). Here, Poland made no direct requests of the United States courts; it operated exclusively through the United States government throughout the proceedings, *see Khochinsky*, 116 F. Supp. 3d at 414–15, 421; and nothing in the Extradition Treaty indicates that such actions might waive Poland's sovereign immunity over related matters.

Khochinsky's reliance on *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992) is misplaced. That case did not involve extradition proceedings at all. Instead, the Republic of Argentina had "enlist[ed] the aid of our courts, via a letter rogatory, in serving [Siderman] with process." *Id.* at 722. It directly "requested the court's assistance in serving papers on Siderman," and the court "complied with the request." *Id.* Given this direct request, the Ninth Circuit held that Argentina had sufficiently engaged the American courts in the matter

such that the district court could determine on remand whether the letter rogatory implicitly waived sovereign immunity. *See id.* ("To support a finding of implied waiver, there must exist a direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief.").

This case is readily distinguishable from *Siderman*. As the Ninth Circuit itself has made clear, "[u]nlike a letter rogatory, which is a direct court-to-court request, extradition is a diplomatic process." *Blaxland*, 323 F.3d at 1207. A foreign state's "invocation of its extradition treaty rights, unlike Argentina's direct engagement of our courts in *Siderman*, cannot constitute an implied waiver of sovereign immunity." *Id.* at 1206. Just as in *Blaxland*, then, this Court "confront[s] only the invocation by [Poland] of proceedings to secure [Khochinsky]'s extradition *under the auspices of the executive branch of our government*." *Id.* (emphasis in original); *see also Barapind v. Gov't of the Republic of India*, 844 F.3d 824, 831 (9th Cir. 2016). That is not enough to amount to an implied waiver of sovereign immunity for any of Khochinsky's claims. *Cf. Siderman*, 965 F.2d at 722 ("Only because the Sidermans have presented evidence indicating that *Argentina's invocation of United States judicial authority* was part and parcel of its efforts to torture and persecute Jose Siderman have they advanced a sufficient basis for invoking that same authority with respect to their causes of action for torture." (emphasis in original)). The Court therefore rejects Khochinsky's argument that Poland has implicitly waived its sovereign immunity in this case, and it moves to Khochinsky's other asserted exceptions to sovereign immunity.

### 2. The Counterclaim Exception

Khochinsky next invokes the counterclaim exception to the FSIA to establish jurisdiction. This exception provides that "[i]in any action brought by a foreign state, or in which a foreign

11

state intervenes, in a court of the United States or of a State," sovereign immunity shall not apply to "any counterclaim . . . arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state." 28 U.S.C. § 1607. Khochinsky argues that this exception subjects Poland to suit for his quiet-title and aiding-and-abetting-trespass claims, because the prior extradition proceeding allegedly involved the same subject matter (the painting *Girl with Dove* and Maria's land). *See* Opp'n to Mot. to Dismiss, at 6–7. Without deciding whether these claims arose out of the same transaction or occurrence, the Court concludes that the counterclaim exception does not provide this Court with a basis for jurisdiction here.

Indeed, Khochinsky's theory is foreclosed by the plain text of the statute. Section 1607 operates only when a judicial "action [is] brought *by* a foreign state, or [when] a foreign state intervenes." *Id.* § 1607 (emphasis added). The extradition proceeding related to Khochinsky was, by contrast, brought *by the United States*. *See Khochinsky*, 116 F. Supp. 3d at 414; *cf. Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (noting that the predicate action must be "brought by the foreign state itself"). Poland did not bring the action against Khochinsky. Nor did it intervene in the extradition proceeding or appear as a party in the proceeding at all. *Cf. Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 557 (S.D.N.Y. 2001) (applying the exception where Vietnam "appeared to pursue its claim in interpleader"). Instead, Poland simply used diplomatic channels to exercise its rights under the U.S.-Poland Extradition Treaty. The counterclaim exception is therefore inapposite.

### 3. The Noncommercial Tort Exception

Finally, Khochinsky contends that the noncommercial tort exception grants this Court jurisdiction to hear his claims for First Amendment retaliation and tortious interference with advantageous relations. *See* Opp'n to Mot. to Dismiss, at 10. The noncommercial tort exception

12

to the FSIA permits federal courts to hear cases "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state." 28 U.S.C. § 1605(a)(5). But the noncommercial tort exception does not confer jurisdiction when the claim "aris[es] out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," *id.* § 1605(a)(5)(B).

Because abuse of the extradition process plainly underlies both claims for which Khochinsky asserts the noncommercial tort exception, the Court lacks jurisdiction to consider Khochinsky's claims. Khochinsky acknowledges that the FSIA "specifically excludes claims for malicious prosecution or abuse of process." Opp'n to Mot. to Dismiss, at 11. But the FSIA further immunizes foreign states from "any claim *arising out of* malicious prosecution [or] abuse of process." 28 U.S.C. § 1605(a)(5)(B) (emphasis added). This language makes clear that if the predicate conduct for the alleged tort is simply a foreign state's abuse of process, then the court lacks jurisdiction to hear the resulting claim. As such, Khochinsky's First Amendment and tortious interference claims are "also barred, since they 'arise from' the core [abuse-of-process] claim[] and derive from the same corpus of allegations concerning his extradition." *Blaxland*, 323 F.3d at 1203 (barring emotional distress and loss of consortium claims); *see also Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193, 200 (2d Cir. 1999) (barring emotional distress claim).

This conclusion finds support in the nature of the allegations contained in Khochinsky's complaint. As to the First Amendment claim, Khochinsky alleges that "[d]espite Poland's claim that it sought extradition based on (entirely fabricated) criminal charges, the extradition was in retaliation for Khochinsky's speech." Compl. ¶ 120. According to Khochinsky, then, Poland

13

"*used the extradition process* . . . to deprive [him] of his rights under the First Amendment." *Id.* ¶ 122 (emphasis added). But even if these assertions are true, Khochinsky's First Amendment claim "aris[es] out of" an alleged abuse of the extradition process. 28 U.S.C. § 1605(a)(5)(B); *see De Jaray v. AG of Can. for Her Majesty the Queen*, No. 16-cv-571, 2017 WL 3721751, at *19 (W.D. Wash. Jan. 5, 2017) (granting immunity where "all of Plaintiff's claims ar[ose] from the same alleged misrepresentation/malicious prosecution/abuse of process acts of Defendants"). Describing Poland's conduct as "retaliation" does nothing more than recharacterize the abuse of process at the center of Khochinsky's complaint. *See Blaxland*, 323 F.3d at 1203. And the FSIA does not countenance such attempts to manufacture jurisdiction.

Khochinsky's tortious interference claim suffers from the same jurisdictional defect. Under the FSIA, a plaintiff cannot repackage a foreign state's abuse of process as another tort when the only tortious conduct alleged is the abuse of process itself. *See* 28 U.S.C. § 1605(a)(5)(B). But that is precisely what Khochinsky has attempted here. He alleges that the extradition proceeding itself "caus[ed] Khochinsky to be imprisoned and then subject to house arrest for over than [sic] five months," and that this "crippled Khochinsky's business." Compl. ¶ 133. But even if these assertions are true, the predicate conduct for Khochinsky's claim against Poland remains the act of "invoking the extradition procedures . . . for a malicious purpose." *Blaxland*, 323 F.3d at 1204. And because any potential tortious interference "ar[ose] from" that very same conduct, section 1605(a)(5)(B) of the FSIA precludes this Court from exercising jurisdiction. In light of the above analysis, Khochinsky cannot raise either of the claims he asserts under the noncommercial tort exception to the FSIA.

## CONCLUSION

For the above reasons, Poland's motions to vacate the entry of default and to dismiss for

lack of subject-matter jurisdiction are granted and the case is dismissed without prejudice. A separate order consistent with this decision accompanies this memorandum opinion.

Date: November 6, 2019

_____
DABNEY L. FRIEDRICH
United States District Judge